183 So. 185

### CASMUS v. LEE, Comptroller.

#### 3 Div. 264.

Supreme Court of Alabama.

June 9, 1938.

Rehearing Denied Sept. 6, 1938.

Clarence Mullins, Kenneth Perrine, and J. Howard Perdue, Jr., all of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Wm. H. Loeb, Asst. Atty. Gen., for appellee.

GARDNER, Justice.

Schedule 113 of the General Revenue Act of 1935 (General Acts 1935, pages 441, 486, § 348) reads as follows:

"Each raffle board, punch board, 'tip' board or raffle or chance card or ticket, by whatever name called, shall have securely pasted thereon a revenue tax of a denomination equivalent to ten per centum (10%) of the amount to be derived from the sale of all of the punches or tips thereon, and no tips or punches shall be detached from said boards or cards until after such stamps shall have been so affixed and cancelled. Such license tax stamps to be securely affixed to each of such boards and cancelled and the penalty for failure to so affix and cancel such stamps shall be governed by the provisions of Article XIII, Chapter 7, of this Act, and this Schedule shall be subject to all of the provisions of said Chapter as may be applicable hereto. Provided that none of the provisions herein will be taken as legalizing the operation of any such boards."

Petitioner, upon demand, paid the specified tax to the State Tax Commission. Subsequently, acting under the authority of General Acts 1931, page 527, he filed a

request with the commission for a certificate to the State Comptroller to the effect the payment was made under a mistake of law in that the provision of law under which the same was collected was unconstitutional and void. The commission granted his request, and issued the certificate accordingly. The Comptroller declined, nevertheless, to issue a warrant therefor, and this mandamus proceeding followed.

Petitioner insists the certificate of the Tax Commission is final and conclusive and the issuance of the warrant by the State Comptroller is a mere ministerial duty, citing, among other authorities, Lovelady v. Loveman, Joseph & Loeb, 191 Ala. 96, 68 So. 48; Allgood v. Parker, 21 Ala.App. 273, 107 So. 326.

But these authorities were dealt with and distinguished from cases of this character in Blan v. Hollywood Realty Co., 218 Ala. 1, 118 So. 257, and the opinion in this latter case suffices to demonstrate in this that the statute here under review providing for a refund is not properly to be construed as requiring the acceptance of the opinion of the Tax Commission on the constitutionality of a law as final and conclusive, and as foregoing a consideration thereof by the courts. We feel that upon this question the citation of the Blan Case, supra, is sufficient without further elaboration.

Petitioner notes Singer Sewing Machine Co. v. Teasley, 198 Ala. 673, 73 So. 969, and Smith v. Tennessee Coal, Iron & R. Co., 192 Ala. 129, 68 So. 865, construing, as he insists, statutes of a similar nature and wording as that contained in the Act of 1931, under which he brings this proceeding; and insists that a payment under protest or an involuntary payment was not a condition precedent to the recovery of the tax paid.

The question of prime importance on this appeal relates to the constitutionality of Schedule 113 of the Revenue Act, and is one of general public interest.

Our conclusion is that the Act is valid. We may concede, therefore, without stopping to inquire and decide, that an involuntary payment was not a condition precedent, and pass to the meritorious questions in the case.

Petitioner relies upon section 65 of our State Constitution to the effect that "the legislature shall have no power to authorize lotteries or gift enterprises for any purposes, and shall pass laws to prohibit the sale in this state of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery."

Admittedly, the punchboards handled by petitioner came within the condemnation of the Act of 1931 (General Acts 1931, page 806), which was passed in harmony with the above noted section of our Constitution. A discussion of this Act and said section 65 of the Constitution is found in the recent case of Try-Me Bottling Co. v. State, 235 Ala. 207, 178 So. 231, and needs no reiteration here.

Petitioner was, therefore, engaged in an unlawful business, and insists that the tax paid was a license tax authorizing that which was prohibited by section 65 of the Constitution, and, of consequence, Schedule 113 is void.

The authorities, in large part, upon which reliance is had, are illustrated by our case of City of Tuscaloosa v. Hanly, 227 Ala. 513, 150 So. 499. But this case, as well as others of like character noted (Hewlett v. Camp, 115 Ala. 499, 22 So. 137; Loiseau v. State, 114 Ala. 34, 22 So. 138, 62 Am.St. Rep. 84; San Antonio v. Schneider, Tex.Civ. App., 37 S.W. 767; State v. Lindsay, 34 Ark. 372), rest upon the familiar principle that legislation permitted to be exercised by municipalities is a mere delegation of the power of the State, and of consequence such legislation must be consistent with the laws, and is not to infringe upon the spirit or be repugnant to the policy of the State as declared in its general legislation.

But these authorities are inapplicable to the question of the power of the State legislature in the passage of laws which is paramount unless restrained by some constitutional provision, either State or Federal. This distinction is well noted in the text to 37 Corpus Juris 216, with citation of apt authorities, wherein it is said: "A municipality cannot license a business which is prohibited by the common or statute laws of the state. But the fact that a business is unlawful, and a license cannot be issued or obtained, authorizing it, does not prevent the imposing and collection of a tax upon such business from a person engaged therein." And in 4 Cooley's Taxation (4th ed.) section 1689, is a like statement that, "it is no defense to an action to collect a' privilege tax that the business upon which the tax is assessed is illegal." See, also, Cooley's Constitutional Limitations (5th ed.) page 721.

■ Perhaps the most lucid and convincing discussion of the question is found in Youngblood v. Sexton, 32 Mich. 406, 20 Am. Rep. 654, in an opinion by Judge Cooley, the well known author of the above noted text-books. That case is here much in point. The Constitution of Michigan declared that "the legislature shall not pass any act authorizing the grant of license for the sale of ardent spirits or other intoxicating liquors." The legislature nevertheless assessed a tax on dealers in liquors, who challenged the constitutional right of the legislature to impose it. The opinion states the question in the following manner:

"The objection which appears to be principally relied upon is, that a tax on the traffic in liquors under this law is equivalent to a license of the traffic, and therefore comes directly in conflict with that provision of the constitution which declares that 'the legislature shall not pass any act authorizing the grant of license for the sale of ardent spirits or other intoxicating liquors.'"

And the following excerpts from this authority will suffice to give the drift of the reasoning of the author and the conclusion which follows. The opinion proceeds:

"Does, then, a tax upon the traffic in liquors come within the condemnation of this provision of the constitution, as being equivalent to a license of the traffic? Is it the same in legal effect, or is it the same according to the popular understanding of the term license? This is the question that presents itself for decision on this branch of the case.

"The popular understanding of the word license undoubtedly is, a permission to do something which without the license would not be allowable. This we are to suppose was the sense in which it was made use of in the constitution. But this is also the legal meaning. 'The object of a license,' says Mr. Justice Manning, 'is to confer a right that does not exist without a license.' —Chilvers v. People, 11 Mich. 43, 49. Within this definition, a mere tax upon the traffic cannot be a license of the traffic, unless the tax confers some right to carry on the traffic which otherwise would not have existed. We do not understand that such is the case here. * * *

"The idea that the state lends it countenance to any particular traffic by taxing it, seems to us to rest upon a very transparent fallacy. It certainly overlooks or disregards some ideas that must always underlie taxation. Taxes are not favors—they are burdens—they are necessary, it is true, to the existence of government, but they are not the less burdens, and are only submitted to because of the necessity. * * *

"It may be supposed that some idea of special protection is involved when a business is taxed; taxation and protection being reciprocal. If the tax upon any particular thing was the consideration for the protection given to the owner in respect to it, this might be so; but the maxim of reciprocity in taxation has no such meaning. No government ever undertakes to tax all it protects. If a government were to levy only poll taxes, it would not be on the idea that it was to protect only the persons of its citizens, leaving their property open to rapine and plunder. * * *

"All this is only an apportionment of taxation by the selection of subjects which under all the circumstances it is deemed wise and politic to subject to the burden. Whether a person in respect to his property or his occupation falls within the category of taxables or not is immaterial as affecting his claim to protection from the government. It is enough for him that the government has selected for itself its own subjects for taxation, and prescribed its own rules. It is his liability to taxation at the will of the government that entitles him to protection, and not the circumstance of his being actually taxed. And the taxation of a thing may be, and often is when police purposes are had in view, a means of expressing disapproval instead of approbation of what is taxed. * * *

"Taxes upon business are usually collected in the form of license fees; and this may possibly have lead to the idea that seems to have prevailed in some quarters, that a tax implied a license. But there is no necessary connection whatever between them. A business may be licensed and yet not taxed, or it may be taxed and yet not licensed. And so far is the tax from being necessarily a license, that provision is frequently made by law for the taxation of a business that is carried on under a license existing independent of the tax."

The Tennessee court in Foster v. Speed, 120 Tenn. 470, 111 S.W. 925, 22 L.R.A., N.S., 949, 15 Ann.Cas. 1066, held to like effect, and followed the reasoning in the Youngblood Case, supra. The conclusion of that court was that "a business which is

400

prohibited may be taxed." An apt illustration of this principle is found in the Youngblood Case where the author refers to federal laws taxing the liquor traffic in states where the liquor traffic was prohibited. The federal law found a business in existence and taxed it, though giving it no protection whatever. And the question is asked, What would have prevented the state from taxing the same traffic at the same time? Is it any more restricted in the selection of subjects of taxation than the general government? If one may tax and at the same time refuse to protect, may not the other do the same? The opinion concludes with the observation:

"If one puts the government to special inconvenience and cost by keeping up a prohibited traffic or maintaining a nuisance, the fact is a reason for discriminating in taxation against him; and if the tax be imposed on the thing which is prohibited, or which constitutes the nuisance, the tax law, instead of being inconsistent with the law declaring the illegality, is in entire harmony with its whole purpose, and may sometimes be even more effectual."

But we forego further discussion.

Schedule 113 requires a revenue stamp tax placed on these punchboards, and has for its object both regulation and revenue. The concluding sentence put the tax-payer on notice that the stamp tax gave him no protection wherein it said: "Provided that none of the provisions herein will be taken as legalizing the operation of any such boards."

The petitioner dealt at arm's length with the State, and with notice that he must pay the tax so long as he conducted the business, an occupation tax, and not a license in the popular sense of the word, though he gained no protection by its payment. We can add nothing to the able discussion in the Youngblood Case, supra, and other cited authorities, and rest content with the statement of our conclusion that these authorities and the reasoning upon which they are based are sound, and furnish precedent to be followed. And we may add that we find no authority to the contrary which may properly be said to be in point.

Upon the merits, therefore, we think the judgment is due to be affirmed.

Perhaps a serious question is presented concerning petitioner's right to the issuance of the mandamus writ, considering the illegality of his business and the equitable nature of this character of proceedings.

People ex rel. Wood v. Board of Assessors, 137 N.Y. 201, 33 N.E. 145; Duncan Townsite Co. v. Lane, 245 U.S. 308, 38 S.Ct. 99, 62 L.Ed. 309. But in view of the decision upon the merits of the case, which was deemed advisable, we pass that question without determination or further discussion.

Let the judgment stand affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.

On Rehearing.

PER CURIAM.

Application for rehearing overruled.

ANDERSON, C. J., and GARDNER, THOMAS, BOULDIN, and KNIGHT, JJ., concur.

BROWN and FOSTER, JJ., did not sit.