15766

JOLLY v. ATLANTIC GREYHOUND CORP. *ET AL.*

(35 S. E. (2d), 42)

*Messrs. Sloan & Sloan,* of Columbia, S. C., Counsel for Appellants,

*Messrs. J. Carl Kearse* and *B. D. Carter,* both of Bamberg, S. C., Counsel for Respondent,

August 13, 1945.

MR. ASSOCIATE JUSTICE STUKES delivered the unanimous Opinion of the Court.

This is an appeal from an award of workman's compensation which was made by the Industrial Commission and affirmed on appeal to the Circuit Court, except that the amount for disfigurement was reduced by the Court from $1,500.00 to $800.00 by means of an order *nisi*, to which the claimant assented. (The decision was before publication of our opinion in *Schwartz v. Mount Vernon-Woodbury Mills, Inc.*, 206 S. C., 227, 33 S. E. (2d), 517.)

The following facts, in substance, were found by the commission upon competent evidence and affirmed by the Court. Claimant was a filling station attendant at the rural establishment of one Porter, in whose regular employ he was. The filling station feature was incidental to the business which included a store, a cafe and beds for lodging, the latter chiefly patronized by sportsmen visiting the nearby Edisto River for fishing. There was no automobile service offered or available at the station beyond the sale of gasoline and oil, free air and water, no motor or even tire repairs or changes were made. Claimant worked generally about the entire place, in the course of which he served automobiles with fuel and lubricants, water and air.

A bus line of Atlantic Greyhound, one of the appellants, passed over the paved highway to which the service station was adjacent, and on the occasion which gave rise to this controversy a loaded passenger bus in sole charge of the corporation's driver, one Garner, approached the station rolling, with motor dead, and stopped at the gasoline pump. Never before had this been done, and the Greyhound Corporation had never obtained supplies or any service from Porter or claimant, his employee. Garner requested and obtained from Porter some gasoline in a quart can which he picked up empty at the front of the station, raised the hood of the engine and poured some of it in the carburetor after removing some part from the latter. Then he attempted to start the motor by operation of the selfstarter from the driv-

er's seat, but failed. Thereupon he requested Jolly, the claimant and respondent, to pour gasoline in the carburetor as he, the driver, operated the starter from inside the bus. Jolly is small and could not reach the necessary position without climbing on a fender, which he did, and leaned over the motor and poured in gasoline as directed. There was some indication that the motor would start and Garner directed Jolly to continue to pour as he (Garner) operated the starter. When this was done there was an explosion in the motor, apparently what is commonly called "backfiring", and flames shot out and badly injured Jolly about the arms, upper body, head and face. He was immediately taken to a hospital where he was a patient for several weeks and afterward for several more under the care of a physician at his mother's home. He was severely injured about the mouth, nose and ears, and flames and fumes entered his nostrils and injured them.

Several physicians testified from which it was found that he suffered mildly from asthma before the accident, which condition was aggravated as a result of it and he is since subject to more severe and longer-lasting attacks which seriously interfere with such employment as he has undertaken. He attempted to return to his former work, but was unable to continue; tried employment at another filling station with similar failure and at the time of the hearing before the Commissioner he had been working about three weeks at a cleaning establishment for which he collected and delivered clothes upon a commission. He is permanently scarred from the burns, although the doctors testified that the wounds healed well with less permanent signs than they had feared. The burns were described as "third degree", the medical term signifying the worst of burns, those extending through the skin and into the tissues of the body.

The important question in the controversy is whether Jolly was an employee of the Atlantic Greyhound Corporation, within the intendment of the compensation law, at the time of his accidental injury. The hear-

ing commissioner, the majority of the industrial commission and the Circuit Court have so held. Appellants are the alleged employer and its compensation insurance carrier. In the statement of issues at the outset of their brief they, of course, make this question, and further contend that if an employee, Jolly was a casual one to whom the compensation law does not apply. Other questions are stated by appellants but, in the view we take, they need not be considered. Indeed, for the purpose of our discussion and decision, it may be assumed (and not decided) that Jolly was at the time of his injury an employee of Greyhound for, if so, he was undoubtedly a casual employee to whom the compensation law is not applicable—this by its own plain language.

Appellants point out the following apparent inconsistency in our compensation law. In the section containing definitions, 1942 Code, § 7035-2, the following occurs:

"The term 'employee' means every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written, including aliens, and also including minors, whether lawfully or unlawfully employed, but excluding persons whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer."

Section 7035-16 provides as follows: "This article (the compensation act) shall not apply to casual employees, farm laborers, federal employees in South Carolina and domestic servants * * *."

It is urged by appellants that the quoted provisions are inconsistent, the first exempting as casuals only those not so employed in the course of the trade, business, etc., of his employer; whereas the subsequent provision exempts all casual employees. This seeming conflict was adverted to in the case of *Ward v. Ocean Forest Club*, 188 S. C., 233, 198 S. E., 385, in which it was mentioned as a discrepancy. However, it was not necessary to solve or even discuss the problem for the employee there was clearly not a casual

one, and it was so decided. The authorities cited upon the latter point are interesting and they are applicable to this case to demonstrate that if Jolly was an employee of Greyhound, he was most certainly a casual employee. The plaintiff, Ward, in the cited case was not a casual employee and, therefore, was not confronted with the bar of section 7035-2 or of section 7035-16. It is noted that these sections of the act are there referred to as 2 and 14, that being before the codification of them in the Code of 1942; they are the same.

It is now determined upon close analysis that there is not the conflict between sections 7035-2 and 7035-16 which appears upon first blush. 7035-2 is the definition section of the act, as stated above, wherein the term "employee", as used in the act, is defined and the definition thereafter qualified and limited, plainly by the use of the following words: "but excluding persons whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer." Thus one such is not an employee of his employer, for the purposes of the act; that is, he is not an employee for such purpose, if his employment is both casual and not in the course, etc., of his employer's occupation.

On the contrary, there may be an *employee,* within this definition and the other terms of the act, whose employment is casual but in the course of the trade, etc., of his employer's occupation. The latter qualification makes him an employee, under the definition. But he is expressly exempted from the terms of the act by section 7035-16 which provides beyond peradventure of a doubt that the law does not apply to casual employees.

The foregoing is a simple analysis, but we think it an obvious and accurate one, of the relevant provisions of our compensation law and it constitutes a

construction that harmonizes these sections, which appear upon first examination to conflict, and is in accord with the elementary rule of construction that all parts and provisions of a legislative enactment must be given effect, if reasonably and logically possible; and in this case there is no difficulty in reaching the conclusion stated. Indeed, none other is apparent and it is plain that the Court cannot properly read out of the law or ignore section 7035-16, which we repeat again for emphasis: "This article (act) shall not apply to casual employees * * *."

If it were impossible to reconcile the seeming conflict between sections 7035-2 and 7035-16, as is done above, and which we think sound, there is another rule of statutory construction which would bring about the same result insofar as this controversy is concerned. The "last legislative expression" rule is referred to and is well illustrated by our recent case of *Feldman v. Tax Commission*, 203 S. C., 49, 26 S. E. (2d), 22, where conflicts were found in the liquor laws of the State and it was impossible to harmonize them. It was held in accord with the cited rule, upon stated authorities, that the subsequent provision of the statutes should prevail over a prior one, the later being the last in point of time or order of arrangement. Thus in this case the exemption of casual employees from the application of the compensation law would prevail over any inconsistency in the prior definition of the term "employee" contained in the preceding section, 7035-2. In other words, if there were repugnancy between the two statutory provisions, which we do not find, the rule of the *Feldman case* requires that the clear exemption of casual employees contained in the later section, 7035-16, is the law, and casual employees are not entitled to workmen's compensation under our act.

The conclusion is reached in full recognition of the beneficent rule of interpretation of law and facts, to which this Court is committed, to the effect that the purpose of the compensation act is to include employees and not exclude them. *Yeomans v. Anheuser-Busch, Inc.*, 198 S. C., 65, 15 S. E. (2d), 833, 136 A. L. R., 894; *Alewine v. Tobin Quarries*, 206 S. C., 103, 33 S. E. (2d), 81. And citation of authority is unnecessary to show that this Court is also committed to a general liberal construction of the law in favor of employees so that it will accomplish the purpose for which it was intended, but see the South Carolina cases in point in 34 S. E. Dig., pt. 2, Workmen's Compensation, 583 *et seq.*, Key 51 and 52.

But these rules cannot justify the avoidance of the plain provisions of the law as written and enacted by the legislature which, only, has the power of amendment. In this instance there is no doubt which, if it existed, could be resolved in favor of the seriously injured claimant. "While the Workmen's Compensation Act should be liberally construed, words (thereof) should be given their established legal meaning, or the meaning which the Legislature intended." *Coakley v. Tidewater Corp.*, 194 S. C., 284, 288, 9 S. E. (2d), 724, 726. Liberal construction in favor of employee does not warrant violence to a specific requirement of the act. *Wallace v. Campbell Limestone Co.*, 198 S. C., 196, 17 S. E. (2d), 309. See also, *Brown v. Martin*, 203 S. C., 84, 26 S. E. (2d), 317, and 71 C. J., 354, 355.

That the claimant in this case was no more than a casual employee of Atlantic Greyhound Corporation is beyond cavil. Decisions of other States allowing compensation in somewhat similar cases are of no value without examination of the exact terms of the various compensation laws under which they were decided. It is noted that many States do not have the exemption of casual employees which our

act expressly contains. And some of the States have so changed their statutes by amendment years after the original enactments. 71 C. J., 436, 437, 442, and footnotes. We cannot get away from the plain terms of our act by giving controlling weight to the decisions of other Courts, however highly respected, under their various acts which do not contain the provisions of our law. It is the latter that we have to apply. "After all, we are governed by the Act of our own State." *Marchbanks v. Duke Power Co.*, 190 S. C., 336, 2 S. E. (2d), 825, 835.

However, the denial to casual employees of the benefits of Workmen's Compensation is not unknown elsewhere. The following is from the text at pages 442 and 443, Vol. 71, C. J.:

"Where the statute provides that an employee does not include one whose service is casual or one who is not engaged in the usual course of trade, business, profession, or occupation of his employer, or is employed otherwise than for the purpose of the employer's trade or business, the word 'or' cannot be construed to mean 'and' so as to require that employment be both casual and not in the course of the employer's trade in order to be excluded from the protection of the act. Accordingly, under such an act, an employee cannot recover if his employment is casual."

The *Marchbanks case, supra,* and *Boseman v. Pacific Mills,* 193 S. C., 479, 8 S. E. (2d), 878, concerned injured employees of subcontractors and involved sec. 7035-22, Code of 1942, then sec. 19 of the compensation act; and the point of casual employment (sec. 7035-16) was not involved. Nor was it in *Patterson v. Courtney Mfg. Co.,* 196 S. C., 515, 14 S. E. (2d), 16, in which compensation was denied because the injured employees were not engaged in the "course of business" of the employer. These cases have no application here and are thus briefly mentioned only because they have been cited.

The learned trial court was influenced by the decision of *Berry v. Atlantic Greyhound Lines*, 4 Cir., 1940, 114 F. (2d), 255, 258. In that case Berry was a mechanic employed by Breland Chevrolet Company of Walterboro. Greyhound called upon Breland for motor repairs to a bus and Berry was sent to do the work and was injured by explosion of the engine. He sued at common law for negligence and his action was dismissed upon the ground that he should claim workmen's compensation, presumably against Greyhound although Breland, the general employer of Berry, was also operating under that law. The burden of the decision apparently rests on the present Code, Sec. 7035-22 (then Sec. 19 of the original act), and that Breland was a contractor, whose employee, Berry, became Greyhound's employee for the purpose of workmen's compensation, under this "subcontractor" section of our law. That distinguishes the case from this. However, the opinion proceeds to discuss sections 7035-2 and 7035-16 (then 2 and 14) and finds that the latter is, in effect, swallowed up in the definition of "employee" in the former, "in the light of the broad provisions of Section 19 (now sec. 7035-22)." With this we disagree for the reasons which have been stated; and we are unable to find any reference to, or effect upon, casual employees in sec. 7035-22 (formerly sec. 19) or upon the unmistakable exemption of them which is contained in sec. 7035-16.

The highly respected Court relied in part for its foregoing decision upon the authority of *Johnson v. Asheville Hosiery Co.*, 199 N. C., 38, 153 S. E., 591, 594. As is well known, our compensation law is very like that of our twin-sister State of North Carolina and generally our decisions thereabout are in accord. It appears from the report of this case that our sections 7035-2 and 7035-16 are quite similar to their sections 2(b) and 14(b). But section 14(b), which corresponds to our section 7035-16, received scant atten-

tion. All that was said concerning it is in the nature of an assumption at the last of the opinion as follows: "Section 14(b) of the North Carolina ,Compensation Act provides that 'this Act shall not apply to casual employees, farm laborers,' etc. This section, however, is not totally repugnant to section 2(b) for the reason that, even if the employment be casual, the employee is still entitled to compensation if he was injured while 'in the course of the trade, business, profession or occupation of his employer,' etc."

Indeed, what we deem the controlling importance of section 14(b), our § 7035-16, was excluded from consideration by the Court in its statement of issues at the outset of the opinion, as follows: "Two questions of law are presented by the record. 1. Was the plaintiff an independent contractor and therefore not entitled to compensation? 2. Was the employment 'both casual and not in the course of the trade, business, profession or occupation of his employer'?"

This North Carolina decision can hardly be considered an authority for the sustention of the compensation award in this case because of the very different facts of the cases. There the employee-claimant was a painter and (quoting the statement of facts preceding the opinion of the court): "Was called by the defendant to repair a spray gun at its plant. While performing this work the plaintiff was employed to paint the ceiling of the factory of defendant at an agreed price of $1.25 per hour. The defendant furnished the paint and a helper. No time was fixed in which the work was to be completed. The room in which the plaintiff was painting the ceiling was occupied by machinery and used in the regular business of defendant. It was advisable to paint the ceiling white in order to afford more light in the room. The evidence tended to show that the defendant told the plaintiff 'when to paint and where,' and, furthermore, that the defendant had the right under the verbal

contract to discharge the plaintiff at any time the work was not progressing to its satisfaction. * * * There was evidence to the effect that it would require about four days to complete the work." These facts are in such startling contrast to the facts before us in this case, that comment is unnecessary to demonstrate that they completely differentiate the cases.

The *Johnson case, supra,* finally went off upon the point as to whether the employment there was "in the course of the trade, business, profession, or occupation of his employer." It was held that it was, so that the case is more similar in facts and result to our decisions of *Marchbanks v. Duke Power Co., supra,* and *Boseman v. Pacific Mills,* also *supra,* which, however, were decided under the subcontractor section, 7035-22. We cannot accept it as authority for the affirmance of an award of compensation to the claimant in this case, as extremely casual as his employment was, in view of the specific exemption of casual employees which is contained in Code, section 7035-16.

The West Virginia act, in defining exceptions, uses the terms "casual employment" and "persons casually employed," and the Federal Court in *Western Union Teleg. Co. v. Hickman,* 4 Cir., 1918, 248 F. 899, 900, 161 C. C. A.; 17, in constructing these terms, states: "This noticeable departure from the language of the English statute indicates a legislative intent to broaden the exception and place it on a different basis. Its apparent effect is to make exemption depend, not on the nature of the work performed, but on the nature of the contract of employment. If the hiring be incidental or occasional, for a limited and temporary purpose, though within the scope of the master's business, the employment is 'casual', and covered by the exceptions."

Respondent also relies upon the case of *Johnson v. Wisconsin Lumber & Supply Co..* 203 Wis., 304, 234 N. W., 506, 72 A. L. R., 1279. The latter report of it is followed by an annotation (72 A. L. R., 1283) which contains di-

gests of other decisions which were also cited by the commission as authority for its award. But, as indicated above, the statutes involved in those cases do not appear to contain the exemption from their application of all casual employees, which our act does. "Casual employees" and "casual employment" have been interpreted in many decisions of other Courts which are collated in annotations in 33 A. L. R., 1452, 60 A. L. R., 1195, and 107 A. L. R., 934. See also the footnotes in 71 C. J., 437, 438.

No reflection is necessary to determine that such employment as Jolly had with the Atlantic Greyhound Corporation was as casual as can be well imagined. The term has frequently been expounded by consideration of its antonyms, some at least of which are "regular," "certain," "periodic," and "systematic." See also Webster's New International Dictionary, Second Edition, 1939, where the adjective "casual" is defined as meaning: "Happening or coming to pass without design, and without being foreseen or expected; coming by chance; coming without regularity; occasional; accidental." However, there is no question but that Jolly's employment by Greyhound (if the relation of employer-employee existed) was casual. The lower Court so held and there is no appeal therefrom.

As is seen from the foregoing discussion, this appeal turns entirely upon a question of law (the facts of the controversy were concluded by the findings of the commission), as to review and correction of errors thereabout the Court has plenary power upon proper appeal, as here. Code, Sec. 7035-63.

The functions and responsibility of the courts do not include the expression of opinion concerning the wisdom of legislation; but we think it not amiss to call attention to the obvious unforeseeability of the obligations of an employer and his insurance carrier, if the fortuitous cir-

cumstances of this case should entail liability under the compensation law.

Reversal of the order of affirmance of the award of workmen's compensation will not take away from claimant all means of redress, for his proceeding under the compensation act with this unfavorable result has not affected his right at common law to enter suit against the Atlantic Greyhound Corporation and Garner, or either, in an action for damages and whatever right, if any, he had on that score is unimpaired by this decision.

The award of the Industrial Commission is set aside and the case is reversed and remanded for entry of judgment for the appellants.

Mr. Chief Justice Baker and Messrs. Associate Justices Fishburne, Taylor and Oxner concur.