16069

INGRAM *ET AL.* v. BEARDEN, SHERIFF
(47 S. E. (2d) 833)

*Messrs. Price & Poag,* of Greenville, for Appellants,

400

*Mr. J. D. Todd, Jr.,* of Greenville, for Respondent,

*Mr. John G. Dinkins,* of Manning, for H. C. Keels, Jr., *Amicus Curiae,*

*Mr. J. D. Todd, Jr.,* of Greenville, for Respondent, in reply to *Amicus Curiae,*

402

April 26, 1948.

FISHBURNE, J.: For the reasons well stated in the order appealed from, all exceptions are overruled and the order is adopted as the opinion of the Court. Let it be reported.

STUKES and OXNER, JJ., concur.

BAKER, C.J., and TAYLOR, J., dissent.

BAKER, C.J. (dissenting): The appellants, plaintiffs below, are the owners of a coin operated device commonly known as a pin table. The special characteristic of this machine, as far as pertinent to the present case, is that it has

a "free play feature"; that is to say, when the player achieves a certain score the machine automatically gives him a free game. It is admitted that the machine does not pay off in money or tokens.

The respondent, Sheriff of Greenville County, deemed this machine to come within the prohibitions of the gaming statutes and confiscated the same. Thereupon the present action was brought to enjoin the respondent and his deputies from confiscating other machines of a similar type owned and operated by the appellants and to require the respondent to restore the above mentioned machine to the appellants.

The pleadings disclose no material factual dispute between the parties. The matter was heard on the pleadings before the County Judge of Greenville County at a hearing under an order *nisi* for relief *pendente lite*. A final order was made in the case, the effect of which is to hold that the operation of machines of the character in question is *per se* outlawed, and that the machines are subject to confiscation. This holding is predicated by the County Judge upon the decisions of this Court in the cases of *Alexander v. Martin,* 192 S. C. 176, 6 S. E. (2d) 20, and *Alexander v. Hunnicutt,* 196 S. C. 364, 13 S. E. (2d) 630, and upon the provisions of Sections 1301 and 1301-1 of the Code of 1942, and Act No. 284 (p. 592) of the Acts of 1947.

Two distinct legislative factors are involved in the *Alexander cases* and also in the present case.

(1) The code sections above referred to render it unlawful to operate "any vending or slot machine, punch boards, pull boards, or other devices pertaining to games of chance of whatever name or kind, except automatic weighing, measuring, musical and vending machines which are so constructed as to give a certain uniform and fair return in value for each coin deposited therein, and *in which there is no element of chance.*" (Emphasis added.)

(2) The 1939 State Appropriation Act (sec. 101(1) (a), 41 Stat. at Large, p. 650) provides that no machine "for the playing of music, games or amusements, operated by a slot wherein is deposited any coin or thing of value" shall be operated unless a license is procured from the South Carolina Tax Commission authorizing such operation; the operator is required to pay a stated license fee for each machine. Another provision of the same Act (*ibid,* p. 653) is to the effect that the issuance of a license *"shall not make lawful the operation of the gambling machine or device, the operation of which is made unlawful under the laws of this State."* (Emphasis added.)

As construed by this Court in the two *Alexander cases* above cited, the 1939 Act must be applied in connection with the construction and application of Sections 1301 and 1301-1 of the Code, with the result that a machine may still be deemed to be unlawful, even though its operation is licensed by the South Carolina Tax Commission, in the event that the machine is found to violate the provisions of the Code Sections above referred to.

The provisions of the 1939 State Appropriation Act above referred to were re-enacted in successive years through the year 1946. See, for example, Acts 1945, 44 Stat. at Large, 379, p. 489; Acts 1946, 44 Stat. at Large, 1581, p. 1704.

Since the machines involved in the *Alexander cases* were of the precise character of those involved in the present case, it follows from the foregoing that in the absence of a change in the statutory situation, those cases are controlling, and have the effect of outlawing the machines now in question.

But the above stated provisions of the 1939 and later Appropriation Acts were not re-enacted in the State Appropriation Act of 1947. Instead, the substance of those provisions was incorporated by the General Assembly in a special and separate Act enacted in 1947 (Act No. 284, p. 592). This Act re-enacts the provision of the earlier an-

nual Appropriation Acts that the operator of slot machines shall obtain a license for every machine, and pay a stated license fee, with the express reservation that the issuance of a license shall not validate the operation of any gambling machine or device, *"the operation of which is made unlawful under the laws of this State."* (Emphasis added.) However, the statute introduces a new element in the situation by dealing specifically with "any coin operated non-payout Pin Tables with free play feature * * *" *viz.*:

"That every person, firm or corporation owning, operating or maintaining any place of business, or other place, wherein or in connection with which, is operated or located any machine for the playing of music, games or amusements, operated by a slot wherein is deposited any coin or thing of value or any machine in which is kept any article to be purchased by depositing any coin or thing of value, *or any coin operated non-payout Pin Tables with free play feature* shall apply for and procure from the South Carolina Tax Commission a license for the privilege of operating any and every such machine and shall pay for such license a tax of Fifteen ($15.00) dollars per machine; * * *." (Emphasis added.)

Thus, under the present statute law of the State the prohibition is against operating a slot machine wherein is deposited any coin or thing of value *"or any coin operated non-payout Pin Tables with free play feature"* without procuring a license and paying the required license fee.

Obviously, as to slot machines other than pin tables of the character in question, it is still true that the licensing of a machine does not (under the *Alexander cases*) absolve the operator from the necessity of establishing that the operation of the machine does not violate Sections 1301 and 1301-1 of the Code; but where the particular machine is a *"coin operated non-payout Pin Table(s) with free play feature,"* the effect of the statute is to specifically provide

for the operation of such a machine upon the procurement of and payment for a license.

In other words, as far as pin tables of the character involved in the present case are concerned, the 1947 statute expressly provides that a person operaing such a machine must procure a license as a condition of such operation. When he does this, he is complying with the specific provisions and directions of the 1947 Act. To hold that in the face of such a statutory situation the operation of a free play pin table may be declared by us to be a violation of law would be virtually to repeal by judicial construction the applicable language of the 1947 Act and to deprive that Act, to the extent of its specification of free play pin tables, of all legislative meaning.

To express the matter another way: when the *Alexander cases* were decided it was for this Court to say whether free play pin tables involve the elements of chance which are condemned by Sections 1301 and 1301-1 of the Code; and when we concluded that they did, it was merely a case of applying to the situation the statutory direction that the obtention of a license from the South Carolina Tax Commission did not validate the operation of machines which otherwise we found to be illegal gambling devices. But when, through the 1947 Act, the General Assembly undertook in specific language to provide for the licensing of the free play type of machine with which we are here concerned, and which was involved in the *Alexander cases,* it is wholly beyond our sphere to enter into any discussion as to whether such machine is to be deemed a device of a gambling nature, the operation of which is prohibited by the Code.

The applicable sections of the Code must obviously be deemed to be amended by the 1947 Act through the interpolation into it of a provision (conforming with the last legislative expression on the subject) that the operation of free play pin tables is lawful when the machines have been duly licensed.

As said by this Court in *Hancock v. Southern Cotton Oil Company*, 211 S. C. 432, 45 S. E. (2d) 850, 853:

"The paramount consideration and controlling factor in the interpretation of a statute is the intent of the Legislature, and each enactment of the Legislature is to be construed in the light of its own context. This legal precept is too well settled to require citation of authorities."

And again, in *Greenville Enterprise, Inc., et al., v. Jennings et al.*, 210 S. C. 163, 41 S. E. (2d) 868, 869, we said:

"All rules for statutory construction are servient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and must be construed in the light of the intended purpose. * * *" (Citing authorities.)

Some definite legislative purpose must be ascribed to the 1947 Act, insofar as pin tables are concerned. If the purpose was not the one expressed above, it is difficult to see what the purpose could have been. It was the intendment of the Legislature to do one of two things; either to legalize a coin operated non-payout pin table, with free play feature, or to construct and set a deadfall for the unwary and credulous. We reject the latter.

The views hereinbefore expressed are limited to the precise character of machines described in this opinion, and to the operation of such machines in a lawful manner. A coin operated non-payout pin table, with the free play feature, conceivably could be so constructed and operated as to involve an element of gaming or chance condemned by the Code sections above referred to. But the record before us involves no such considerations.

It follows that the order of the County Court dismissing the complaint and denying injunctive relief as prayed therein should be reversed, and the case remanded to the County

Court for further proceedings in accordance with the foregoing.

TAYLOR, J., concurs.