STATE of Alaska, Appellant,

v.

PINBALL MACHINES, Appellee.

PINBALL MACHINES, Appellant,

v.

STATE of Alaska, Appellee.

Nos. 529, 539.

Supreme Court of Alaska.

Aug. 19, 1965.

**924**

Warren C. Colver, Atty. Gen., Juneau, and Dorothy Awes Haaland, Anchorage, for the State.

Roger G. Connor and Allan A. Engstrom, Juneau, and Millard Ingraham, Yeager & Ingraham, Fairbanks, Peter J. Kalamarides, Anchorage, for Pinball Machines.

Before NESBETT, C. J., DIMOND, J., and FITZGERALD, Judge.

DIMOND, Justice.

In Pin-Ball Machine v. State [1], decided in 1962, there was evidence that certain pinball machines had been so used that money had been paid for free games won on the machines. We held that the machines were gambling implements within the meaning of the statute which requires law enforcement officials in Alaska to seize and destroy all gambling implements.[2] We did not decide whether, lacking evidence of cash payoffs for free games won, such machines were gambling devices in themselves. That is the question that was presented in the two cases now before us. In No. 539 the superior court at Fairbanks held that a pinball machine was a gambling

1. 371 P.2d 805 (Alaska 1962)

2. AS 11.45.040 (formerly § 4-2-1 ACLA 1949) provides:
The commissioner of public safety, a member of the division of state police, or a police or peace officer designated by the commissioner shall seize and destroy a gambling implement.

device per se, while in No. 529, the superior court at Anchorage held that it was not. We hold that the Fairbanks court was correct and the Anchorage court, in error, and that the pinball machines involved in these cases are gambling implements in themselves, subject to seizure and destruction under law.

The type of pinball machine involved in these cases is an electro-mechanical device operated by a motor which is activated by the insertion of a coin in the machine. Balls are released which the player shoots with a plunger device on the table or playboard portion of the machine. The balls drop into numbered holes which cause corresponding numbers on a bingo-like card on the backboard to light up. When the player gets a certain combination of lighted numbers on the bingo card, the machine registers a certain number of free games to which the player becomes entitled.

The number of free games that one may win depends not only upon the number and sequence of lighted numbers on the bingo card, but also upon the odds which are controlled by a mechanism called a search relay. Odds are varied and generally increase in the player's favor as he inserts more coins in the machine or utilizes the free games that he has accumulated. The effect of increasing the odds is to increase the number of free games that one may win for the same number and sequence of lighted numbers on the bingo card. For example, one may win 16 free games for 4 consecutive lighted numbers in a certain row. As the odds change in the player's favor, the number of free games for the same sequence of lighted numbers could possibly increase to 96. It is conceivable that a player could win as many as 999 free games in all.

When free games accumulated are not played, they can be removed from the machine by pushing a runoff button. The number of free games thus removed is recorded on a meter inside the machine.

The courts generally agree that the essential elements of gambling are price, chance and prize.[3] Thus, one gambles when he pays a price for a chance to obtain a prize. A gambling implement is some tangible thing which is used or mainly designed or suited for gambling.[4]

All of the essential elements of gambling are present here. One may not play a pinball machine without paying a price, that is, by inserting money into the machine to activate it for play.

The element of chance is present, because the outcome—the number of free games that one may win—is not a certain thing. It may be true that some degree of skill is also involved. As the trial judge in No. 529 stated:

> 5. This court, from the evidence presented, cannot find that the game is played wholly without skill. The object is to roll at least three of the five balls in numbered holes or slots which will light up the number on the black—on the backboard of the machine in order to win any free games. There is a bumper in front of each numbered hole on the board of the machine which would prevent the marble being played

---

3. Annot., 89 A.L.R.2d 815, 826–827 (1963).

4. Pin-Ball Machine v. State, 371 P.2d 805, 808 (Alaska 1962) (actual use for gambling); People v. Gravenhorst, Sp.Sess., 32 N.Y.S.2d 760, 766 (1942); Approximately 59 Gambling Devices v. People ex rel. Burke, 110 Colo. 82, 130 P.2d 920, 922 (Colo.1942); People v. One Machine Known as "Circus Days", 23 Ill.App.2d 480, 163 N.E.2d 223, 226 (Ill.1960) (design or adaptation for gambling).

In Pin-Ball Machine v State, 371 P.2d 805, 808 (Alaska 1962), we defined a gambling implement as "any tangible means, instrument or contrivance by which money may be won or lost as distinguished from the game itself." We pointed out that this was but one of the commonly accepted definitions of a gambling implement, and that we were applying it in that case because there was an actual payoff. We did not foreclose ourselves from adopting a broader and more comprehensive definition of gambling as we have done in these cases.

from going directly into the hole. However, the more experienced and skilled a player is, the more likely he is to maneuver the ball past the bumper into the hole. Three numbers in a row might light up—three numbers in a row must light up to win a free game. The more numbers in a row which light up the more games are won. The court finds that a skilled player would have a better opportunity to secure or win free games on the machine than would an unskilled player.

The fact that some skill may be involved does not mean that there is no gamble. To say that a skilled player would have a better opportunity than an unskilled player to win free games is not the same as saying that the skilled player's operation of the machine will certainly result in a fixed number of free games each time he shoots his quota of balls. No matter how much skill one possesses, he has no control over the odds which vary according to the number of coins that are inserted or the number of accumulated games won that are utilized for free play. The odds are controlled entirely by an intricate mechanism within the machine. When balls are placed in a certain sequence of holes, the odds determine the number of free games that the player will receive without regard to his skill or lack of it.

While there is uncertainty, there is chance.[5] Uncertainty in the number of free games that one may win greatly predominates over any skill that may be involved. In these circumstances chance, as an element of gambling, exists.[6]

The remaining question is whether the element of prize is present. The basic argument made by the machines' owners is that when one accumulates free plays he is accorded the privilege of entertaining or amusing himself by playing additional games, that such free games are the only thing that a player may win, and that they do not amount to a prize because they represent neither money nor any other thing of value.

A prize is something offered or striven for in a contest of chance—something which may be won by chance.[7] Whether or not one finds amusement or entertainment in playing a pinball machine, there is always something that he is striving to win by operation of chance, namely, free games. This is the prize—the opportunity to continue to play the machine without paying for it.[8] A pinball machine that costs money to operate and which, through the element of chance awards free games, cannot be operated without the three elements of price, chance and prize being present. Those three elements are inherent in the make-up and operation of the machine, and since they are the elements that constitute gambling, a pinball machine is in itself a gambling device.

The appellant in No. 539 argues that it is implicit in gambling that the prize which one chances to win is more valuable than the price which he pays, that free games have no monetary market value, and that the player who wins free games has not

5. Alvest, Inc. v. Superior Oil Corp., 398 P.2d 213, 215 (Alaska 1965).

6. Westerhaus Co. v. City of Cincinnati, 165 Ohio St. 327, 135 N.E.2d 318, 327 (1956); Johnson v. Phinney, 218 F.2d 303, 306–307 (5th Cir. 1955); United States v. 24 Digger Merchandising Machines, 202 F.2d 647, 650–651 (8th Cir. 1953).

7. Webster, New International Dictionary, at 1970 (2d ed. 1963–unabridged).

8. The prevailing view among the states is that a free reply on a pinball machine is either a prize or a thing of value, within the meaning of various anti-gambling laws. See State v. One Slot Machine, 305 S.W.2d 386 (Tex.Civ.App.1957); Kraus v. City of Cleveland, 135 Ohio St. 43, 19 N.E.2d 159, 161 (1939); State v. Sandfer, 93 Okl.Cr. 228, 226 P.2d 438, 444 (1951); Farina v. Kelly, 147 Conn. 444, 162 A.2d 517, 520 (1960); Westerhaus Co. v. City of Cincinnati, 165 Ohio St. 327, 135 N.E.2d 318, 325 (1956); State v. Doe, 242 Iowa 458, 46 N.W.2d 541, 544 (1951); Annot., 89 A.L.R.2d 815, 828 (1963).

received a prize because he has never had a chance to gain something of greater monetary value in relation to the monetary value of the price he had paid.

 It is not of the essence of gambling that the element of prize have a monetary market value. If that which one seeks to attain, regardless of whether it has value in money, may be attained by chance after payment of a price, then one is gambling. The intrinsic nature of gambling is the payment of a price for a chance to obtain that which one seeks but which one could not obtain unless the element of chance were present and unless one had paid a price for the availability of the chance.

Appellee in No. 529 contends that state law pertaining to pinball machines constitutes legislative recognition that such machines are not gambling devices per se.

 AS 43.35.010 imposes a tax on a person who maintains for use or permits the use on premises under his control of a coin-operated device class 1, class 2 or class 3. The class 2 device, which is the machine involved in these cases, is defined by AS 43.35.090(2) as meaning

> * * * a pinball machine, including a bingo type coin-operated device, horse race machine or other apparatus or device which operates by means of insertion of a coin, token, or similar object and which, by embodying the elements of chance or skill, awards free plays and which contains a device for releasing free plays and a meter for registering or recording the plays so released, or with a provision for

multiple coin insertion for increasing the odds; class 2 does not include bona fide vending machines in which gaming or amusement features are not incorporated;

The substance of appellee's argument is that the legislature did not consider that a class 2 coin-operated device was a gambling implement in itself, because it licensed such a machine for operation and sanctioned its use insofar as the machine awards free plays that are not compensated for in money or other things of monetary value.

 Appellee's argument has no legal or logical foundation. The legislature did not "license" a pinball machine for operation. The statute says nothing about a license. It imposes a tax on a person who maintains or who permits the use on premises under his control of a pinball machine. Such a tax is not a license of the business of operating pinball machines in the sense that it confers a right which would not exist in the absence of the imposition of the tax. The taxing statute cannot reasonably be read that way. And it is too well settled for argument that a business expressly condemned and made unlawful by statute is not made lawful by the fact that a tax is imposed with respect to the operation of such business.[9] As the United States Supreme Court has said:

> The burden of the tax may be imposed alike on the just and the unjust. It would be strange if one carrying on a business the subject of an excise should be able to excuse himself from payment by the plea that in carrying on the business he was violating the

9. Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475, 479 (1955); United States v. Stafoff, 260 U.S. 477, 480, 43 S.Ct. 197, 67 L.Ed. 358, 361 (1922); United States v. Yuginovich, 256 U.S. 450, 462, 41 S.Ct. 551, 65 L.Ed. 1043, 1047 (1920); Pepple v. Headrick, 64 Idaho 132, 128 P.2d 757, 762 (1942); Hunter v. Mayor and Council of Teaneck Tp., 128 N.J.L. 164, 24 A.2d 553, 555–556 (1942); Ingram v. Bearden, 212 S. C. 399, 47 S.E.2d 833, 834–835 (1948); Hinkle v. Scott, 211 N.C. 680, 191 S.E. 512, 513 (1937); State v. Abbott, 218 N.C. 470, 11 S.E.2d 539, 544 (1944); Martin v. State, 144 Tex.Cr.R. 313, 162 S.W.2d 722, 724 (Tex.App.1942); State v. Israel, 124 Mont. 152, 220 P.2d 1003, 1011 (1950); Casmus v. Lee, 236 Ala. 396, 183 So. 185, 186–187, 118 A.L.R. 822 (1938).

law. The rule has always been otherwise.[10]

■ Nor did the legislature sanction the use of a pinball machine to the extent that it awards free plays and nothing else. AS 43.35.090(2), which contains the definition of a class 2 coin-operated device, is nothing more than that—a definition of that which must exist before the tax becomes applicable. Such a definition of a term cannot logically be construed as a legislative statement of the uses and purposes to which a pinball machine may be put.

As part of the same statute which defines a class 2 coin-operated device, AS 43.35.-070 states that:

This chapter does not legalize gambling or the possession of a gambling device.

We have held that a class 2 device, a pinball machine, is a gambling device in itself. The above quoted statutory provision makes it clear that the use or possession of a pinball machine is not made lawful by the mere fact that such machine is defined by law for tax purposes.

■ The appellant in No. 539 contends that there was no adequate proof that the pinball machines which are the subject of this case were the same as the pinball machine which was demonstrated before the court.

A witness for the state, who qualified as an expert on pinball machines, demonstrated a machine before the court and testified as to its make-up and operation. He testified that he had examined each of the machines which were the subject of this case and that the mechanical make-up of those machines was basically the same as the machines demonstrated in court and had the same general features of operation.

The court could infer from this evidence that the machines which were the subject of the action in the court below, although not physically present before the court, were pinball machines of the kind described by the witness, with the basic features of a coin insertion to activate the machine, the shooting of balls by the player, the dropping of balls into holes, the lighting of numbers on a bingo-type card, the varying of odds by a mechanism within the machine, and the winning of free games by chance. Machines possessing those characteristics are gambling implements in themselves. Proof that the subject machines were gambling implements was sufficient.

The pinball machines involved in these two cases are gambling implements within the meaning of AS 11.45.040 and are subject to seizure and destruction.[11] The judgment in File No. 529 is reversed and the judgment in File No. 539 is affirmed. The cases are remanded for further proceedings consistent with the views expressed in this opinion.

10. United States v. Constantine, 296 U.S. 287, 293, 56 S.Ct. 223, 226, 80 L.Ed. 233, 238 (1935).

11. Note 2, supra.