These cases concern the constitutionality of Alabama's franchise tax on foreign corporations pursuant to §40-14-41, Ala. Code 1975. On July 7, 1989, the trial court found that Ala. Code 1975, § 40-14-41, was unconstitutional because it impermissibly discriminates against foreign corporations in violation of the equal protection clause, U.S. Const. amend. XIV, § 1. On August 14, 1989, the trial court ordered that its decision be applied prospectively and denied the taxpayers' requests for refunds. All parties have appealed.
 Facts
Reynolds Metals Company, GMAC Leasing Corporation, General Motors Acceptance Corporation, and General Motors Corporation (taxpayers) are foreign corporations qualified to do business in Alabama and were subject to the levy and payment of Alabama franchise taxes pursuant to Ala. Code 1975, § 40-14-41. However, the taxpayers initiated proceedings in the Circuit Court of Montgomery County seeking to invalidate the Alabama franchise tax on foreign corporations on grounds that it impermissibly discriminates against them in violation of the equal protection clause (U.S. Const. amend. XIV, § 1) and unduly burdens interstate commerce in violation of the commerce clause (U.S. Const. art. I, § 8, cl. 3). The taxpayers' cases were consolidated and submitted to the trial court on cross-motions for summary judgment.
On the issue of the constitutionality of the franchise tax, the trial court entered a detailed and comprehensive order. That order, in part, is as follows:
 "The Court finds that § 40-14-41 facially discriminates against foreign corporations in favor of domestic corporations and likewise is discriminatory in its application. The statistics and figures quoted in the taxpayers' briefs, as supported by the discovery documents, clearly show a gross disparity of franchise taxes paid by a foreign corporation when compared to domestic corporations. In 1982 and 1983, Alabama collected almost $94,000,000 in franchise tax from approximately 29,000 foreign corporations; however, Alabama collected less than $10,000,000.00 in franchise tax from the 82,000 domestic corporations filing franchise tax returns for 1982 and 1983. The Court has considered the other facts and figures set out in the taxpayers' briefs, finds them supported by the evidence, and adopts them as a basis for its holding in this case. Significantly, the Department of Revenue (Department) has failed to advance any legitimate state purpose for this discrimination. Therefore, the Court is compelled to find that § 40-14-41
discriminates against foreign *Page 369 
corporations qualified to do business in Alabama and is unconstitutional."
The trial court pretermitted any discussion of the taxpayers' argument concerning the commerce clause. Also, the trial court reserved any ruling on the appropriate remedy available to the taxpayers until after a hearing was held.
On July 31, 1989, briefs were submitted and arguments were heard on the appropriate remedy and final judgment. Again, the trial court issued a detailed and comprehensive order. The trial court held that whether refunds should be granted is governed by the application of the criteria announced inChevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349,30 L.Ed.2d 296 (1971). The trial court then concluded that, based on Chevron Oil, its holding should be applied prospectively and denied the taxpayers' requests for refunds.
In the main, there are two questions presented to this court by way of appeal and cross-appeal: Whether the franchise tax (§ 40-14-41) is unconstitutional, and if so, what is the appropriate remedy? We will address each issue separately.
 I.
First we will discuss whether the franchise tax on foreign corporations (§ 40-14-41) is unconstitutional in that it violates the equal protection clause of the United States Constitution.
The equal protection clause of the United States Constitution requires that a discriminatory tax be rationally related to a legitimate state purpose. Metropolitan Life Ins. Co. v.Ward, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985);Western Southern Life Ins. Co. v. State Board ofEqualization of California, 451 U.S. 648, 101 S.Ct. 2070,68 L.Ed.2d 514 (1981). Unless there is such a legitimate state purpose, the State does not have the authority to impose more onerous taxes or other burdens on foreign corporations than those imposed on domestic corporations. Western,supra. The equal protection clause forbids a state to discriminate in favor of its own residents solely by burdening residents of other states. Metropolitan, supra. As set out by the United States Supreme Court,
 "[t]he validity of the view that a state may not constitutionally favor its own residents by taxing foreign corporations at a higher rate solely because of their residence is confirmed by a long line of this court's cases so holding [cites omitted]."
Metropolitan, supra, 470 U.S. at 878,105 S.Ct. at 1681. Furthermore, "promotion of domestic business within a state, by discriminating against foreign corporations . . . is not a legitimate state purpose." Metropolitan, supra, at 880, 105 S.Ct. at 1682.
Here, the record is clear that the amount of franchise taxes paid by foreign corporations is enormously disproportionate to that paid by the domestic corporations. As set out in the trial court's order above, Alabama collected almost $94,000,000 in franchise taxes from approximately 29,000 foreign corporations in 1982 and 1983; however, Alabama collected less than $10,000,000 in franchise taxes from 82,000 domestic corporations for the same period. Based on the statistics before it, the trial court found, and we agree, that §40-14-41 clearly discriminates against foreign corporations in favor of domestic corporations. Therefore, the question becomes whether the discriminatory franchise tax is rationally related to a legitimate state purpose.
The trial court found that there was no legitimate state purpose for imposing more onerous taxes on foreign corporations than on domestic corporations. After a review of the record, as well as the briefs before us, we agree.
From a review of the record before us, we find that the taxpayers sought to discover a purpose for the discrimination against them. During discovery, the Department of Revenue (department) was given several opportunities to account for the discrimination. However, the department failed to do so. In fact, the department was specifically requested in an interrogatory to state in detail each and every *Page 370 
legitimate state purpose that the State of Alabama was advancing or exercising by distinguishing in the franchise tax scheme. The department's only response was that it relied on the franchise tax law as written. Similarly, the commissioner of revenue and the chief of the franchise tax division were both given opportunities to explain the purpose of the franchise tax system; however, neither of them could offer a reason for the discrimination.
On appeal, the department did advance a reason for the discrimination. It contended that the discrimination against foreign corporations rationally relates to the purpose of offsetting possible difficulties of enforcing the franchise tax against foreign corporations. In other words, the State contends that the relationship between the differing tax burdens could be a result of enforcement problems.
We do not find such argument to be persuasive. In fact, the chief of the franchise tax division testified in the trial court that foreign corporations were easier to regulate and the remedy against them easier and less costly to enforce.
We also point out that the franchise tax, as originally enacted, was never intended to discriminate against foreign corporations. In fact, it was determined that the solepurpose for different methods of computing the franchise tax was to ensure that there was no discrimination between foreign and domestic corporations. Louisville N.R. R. v. State, 201 Ala. 317, 78 So. 93 (1918). The State intended for its policy toward "domestic and foreign corporations [to be] uniform as far as possible." State v.Southern Natural Gas Corp., 233 Ala. 81, 88, 170 So. 178,183 (1936); affd, 301 U.S. 148, 57 S.Ct. 696,81 L.Ed. 970 (1937).
We have little difficulty in finding that the franchise tax against foreign corporations is clearly a discriminatory tax with no legitimate state purpose. The State has advanced none, nor can we conceive of any legitimate state purpose which would be served by applying the grossly disproportionate tax. Therefore, we affirm the trial court's partial summary judgment order of July 7, 1989, which declared § 40-14-41, Ala. Code 1975, unconstitutional.
 II.
We have concluded above that Alabama's franchise tax is indeed unconstitutional and have affirmed the trial court's July 7, 1989, order. Now, we turn our attention to the appropriate remedy. The trial court concluded that its decision should have prospective relief only, and the taxpayers have appealed.
The first point of inquiry is whether Alabama's statute or case law mandates refunds of the taxes paid prior to the judicial determination that § 40-14-41 is unconstitutional (July 7, 1989). In order to make such a determination, we must decide whether to apply the trial court's order prospectively or retroactively. If we apply the order retroactively, then, theoretically, the taxes collected from the foreign corporations prior to July 7 would have been collected in violation of the constitution. In that instance, it would appear that the state refund statute would require refunds. See Ala. Code 1975, § 40-1-34. However, if we determine that the trial court's order should be applied prospectively only, then, for purposes of the refund statute, it is as if the taxes paid prior to July 7 were, in fact, constitutionally collected and the foreign corporations would not be entitled to a refund. We also note that we have a third option available. This court could apply the trial court's order "quasi-prospectively." Quasi-prospectivity, like prospectivity, protects reliance on prior rules or decisions. However, unlike prospective application, if we determine that quasi-prospective application is appropriate, it would afford refund relief to the instant parties in this case.
Therefore, we must now address the question of whether to apply the trial court's July 7, 1989, order prospectively (or quasi-prospectively) or retroactively.
At the outset, we would note that the determination of retroactive or prospective application of a decision overruling a former decision is a matter of judicial discretion *Page 371 
which must be exercised on a case-by-case basis. State v.Morrison Cafeterias Consolidated, Inc. of Delaware,487 So.2d 898 (Ala. 1986). In deciding whether to give retroactive application to a holding which declares an act unconstitutional, this court must consider matters of public policy. Land v. Bowyer, 437 So.2d 524 (Ala. 1983). Clearly, these questions are very difficult and "it ismanifest from numerous decisions that an all-inclusivestatement of a principle of absolute retroactive invaliditycannot be justified." (Emphasis added.) 437 So.2d at 526-27 (quoting Stallworth v. Hicks, 434 So.2d 229,230 (Ala. 1983)). Furthermore, as stated in MorrisonCafeterias, supra, at 903 (quoting Cooper v.Hawkins, 234 Ala. 636, 638, 176 So. 329, 331 (1937)), "where parties have acted upon the law as clearly declared by judicial decisions, they will be protected, although such decisions are thereafter overruled."
We are further guided by Chevron Oil, supra, where the United States Supreme Court set forth three criteria for determining whether to apply a decision prospectively:
 (1) The decision must establish a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed;
 (2) Whether retroactivity will advance or retard the operation of the equal protection clause;
 (3) Whether retroactive application would impose inequitable results.
(1) Applying the first prong of the Chevron test, we find that this decision does establish a "new rule." The foreign franchise tax structure has been in effect in Alabama since 1907. In 1916, the United States Supreme Court upheld Alabama's franchise tax law as constitutional in the face of an equal protection challenge. Kansas City, Memphis, Birmingham R.R. v. Stiles, 242 U.S. 111, 37 S.Ct. 58,61 L.Ed. 176 (1916). Then, just two years later, the Alabama Supreme Court upheld the constitutionality of the franchise law. Louisville N.R.R., supra. Finally, in 1937, the franchise tax scheme was again upheld against an equal protection challenge in Southern Natural Gas Corp. v.Alabama, 301 U.S. 148, 57 S.Ct. 696, 81 L.Ed. 970 (1937). However, after the Southern Natural Gas decision, Alabama's franchise tax structure has not been challenged until now. Therefore, it appears to this court that, during the time the taxes at issue here were collected, the State had no reason to believe that the franchise taxes were unconstitutional. As concerns any argument that the State possessed specific information that showed the gross disparity in tax collections as early as 1984, we find that, in this instance, (1) it is the courts which are the proper bodies to determine the construction and interpretation of statutes and to declare the law, and (2) a statute is presumed valid until it is attacked.See Casmus v. Lee, 236 Ala. 396, 183 So. 185 (1938);see National Can Corp. v. State Dept. of Revenue,109 Wn.2d 878, 749 P.2d 1286 (1988). Thus, it appears that the first prong of the Chevron test favors prospective application of the rule.
(2) The second prong of the Chevron test has no application here. We have upheld the trial court's determination that the statute is unconstitutional. The court has relieved the taxpayers of the burden, and the legislature will be forced to formulate a franchise tax law which complies with the equal protection clause.
(3) Now we look to the third prong of the Chevron
test, which involves balancing the equities. If this decision is applied retroactively, Alabama faces possible liability for over $200,000,000 in refunds for taxes it collected in good faith under a presumptively valid statute. Alabama would have to refund large sums of money it has already spent. Prospective application would avoid imposing a severe financial burden on the State and its citizens. In such situations, courts of other jurisdictions have frequently denied retroactive application, even though the ruling allows an unconstitutional statute to remain in effect for a limited period of time. See AmericanTrucking Association v. Gray, 295 Ark. 43, *Page 372 746 S.W.2d 377 (1988) (out-of-state truckers were not entitled to refund of taxes found violative of the commerce clause);National Distributing Co. v. Office of theComptroller, 523 So.2d 156 (Fla. 1988) (prospective ruling appropriate where equities weighed against refund of taxes paid under alcoholic beverage statute); James B. Beam DistillingCo. v. State, 259 Ga. 522, 382 S.E.2d 95 (1989);Metropolitan Life Ins. Co. v. Commissioner of Dept. ofInsurance, 373 N.W.2d 399 (N.D. 1985) (no refund of taxes paid under statute giving unconstitutional preference to domestic insurance companies).
We specifically note a recent Georgia Supreme Court case which addressed retroactive application versus prospective application. James B. Beam Distilling Co. v. State,supra. There, a distilling company brought an action to recover a $2.4 million refund in excise taxes that were paid pursuant to a state statute. The court found that the statute was unconstitutional, but applied its decision prospectively only and denied the taxpayer any refunds. The Georgia court did note that there are a number of cases strongly supporting the argument that, because the statute was unconstitutional, it was void ab initio. Nevertheless, the Georgia court held that the void ab initio rule is not an absolute rule and that it has certain exceptions. The court went on to find that, in balancing the equities of the case, it would be unjust to declare the statute void ab initio, and the court thereby concluded that prospective application of the decision was appropriate.
Therefore, in fairness to all who have justifiably relied upon the constitutionality of § 40-14-41 (Kansas City,Memphis Birmingham R.R., supra; Louisville N.R.R., supra;Southern Natural Gas, supra) and in view ofChevron, as well as the equities of this case, we affirm the trial court's decision to apply its decision prospectively only.
We are aware of our authority to apply the trial court's decision quasi-prospectively, as the taxpayers request. We are also aware that a quasi-prospective remedy would afford relief only to the litigants immediately before the court. The justification for such a remedy would be to reward successful litigants and thereby provide an incentive to challenge existing laws in need of reform. See Comment, ProspectiveApplication of Judicial Decisions, 33 Ala.L.Rev. 463 (1982). However, quasi-prospective relief has been criticized by several commentators in that there is the potential for arbitrariness in a court's decision to apply a new rule to the instant parties and to no one else. A decision to reward a few litigants and deny recovery to other similarly situated litigants may itself raise questions of equal protection. Comment, supra.
In view of the above, it is the opinion of this court that justice is better served in this instance in applying a solely prospective remedy. We find that the equities here clearly favor such a result.
Therefore, we find that Alabama's refund statute does not require any refunds in taxes that became due prior to July 7, 1989. Consequently, all taxes that became due prior to July 7, 1989, and that have not been paid, or that have been paid under protest, are due and payable.
We discern a lack of consistency between the July 7, 1989, and the August 4, 1989, orders of the trial court concerning the tax assessments against taxpayer GMAC Leasing Corporation. We are satisfied, however, that the August 14, 1989, final order on this aspect clarifies the trial court's decision to apply its decision here prospectively and not otherwise. We determine the significance of this to be that all taxes which were delinquent prior to July 7, 1989, are due and payable by taxpayer GMAC Leasing Corporation.
The scholarly briefs and oral arguments of counsel, as well as the learned trial judge's detailed judgment order, aided this court in developing its opinion.
This case is due to be affirmed.
AFFIRMED.
ROBERTSON and RUSSELL, JJ., concur. *Page 373