## LING SU FAN *v.* UNITED STATES.

ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 20.  Argued October 27, 1910.—Decided November 14, 1910.

On writ of error the errors considered must be only those of law, and this court cannot consider sufficiency of evidence to convict if it is conceded that there was any evidence at all.

Sections 1 and 2 of law No. 1411 of the Philippine Commission, prohibiting exportation of Philippine silver coin from the Philippine

Islands, is not void as depriving the owner of such coin of his property therein without due process of law within the meaning of the due process provision of the organic act of 1902. Congress, by the act of March 2, 1903, c. 980, 32 Stat. 952, authorized the government of the Philippine Islands to adopt such measures as it deemed proper and not inconsistent with the organic act to maintain parity of gold and silver coinage.

In determining whether a law of the Philippine Commission is invalid as inconsistent with the organic act this court puts aside all questions of the wisdom of the law, even if enacted in the face of axioms of commerce, and considers only whether power exists to enact under, and whether the enactment is inconsistent with, the organic act.

The power to coin money and regulate its value is a prerogative of sovereignty exclusively vested in the Congress·of the United States, from which is derived the power of the government of the Philippine Islands in respect to local coinage.

The quality of legal tender of coin is an attribute of law aside from its bullion value and renders such coin as the Government has made legal tender subject to such reasonable regulations by the police power as public policy may require including prohibition against exportation, and the exercise of such power does not deprive the owner of his property without due process of law even if the bullion value in a foreign country exceeds the legal tender value in the country of coinage.

Where power is given by Congress to the Philippine Commission to prohibit an act, the power includes making violation of the prohibition a misdemeanor.

THE facts, which involve the validity of the Philippine law prohibiting the exportation from the Philippine Islands of silver coin, are stated in the opinion.

*Mr. J. M. Vale,* with whom *Mr. Marion Butler* and *Mr. Lionel D. Hargis* were on the brief, for plaintiff in error:

The Philippine Commission had no power to enact law No. 1411. The court below rests its decision sustaining the power of the Civil Commission in the premises, mainly upon the police powers of the State, but while the

courts have not defined the limit of the police power under the terms of any general rule, that power has a limit. See *Lawton* v. *Steele*, 152 U. S. 133, 143, holding that it must appear that the interests of the public generally, as distinguished from those of a particular class, require the interference, and that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The inhibition upon the use of property imposed by the act passes the limit as here fixed.

Even if the exportation of silver pesos tended to enhance their value above that of the gold pesos, thus disturbing the parity between the two, which is denied, a remedy not impairing the individual right of property was at hand and has been applied to keep coin at home for ages; that of reducing the bullion value of the coin. There was no need of the general public or any reasonable necessity for the act. No necessity existed for the infringement of the rights of private property. The inducement to carry the coins out of the country wholly disappears by an adjustment of the bullion value to commercial conditions, which is one of the functions of government. Money is coined as a medium of exchange. That object is defeated by legislation curtailing its use. The paramount "public interest" lies in a known and accepted medium of exchange supplied by the coin of the realm, not in restrictions upon the use of that coin as a medium of exchange.

A government having a written constitution cannot divest one individual of his property by direct legislation and invest it in another. *Chicago, B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 235.

The effect of the inhibition to export pesos from the Philippine Islands is to legislate the difference in exchange out of the pocket of the owner of the pesos and into that of the money broker.

The means adopted by law No. 1411 for the retention of silver in the Islands are unnecessary and unduly oppressive upon individuals and destroy the property rights of the individual by way of penalty without opportunity to be heard, particularly in that by such legislation the individual is allowed the choice of leaving his money in the Philippine Islands or subjecting himself to the uncertain and erratic course of rates of exchange in removing it.

The act of March 2, 1903, authorizing the Civil Commission of the Philippine Islands to maintain the value of the silver Philippine peso at the rate of one gold peso, specifically limited the power of the Civil Commission to adopting only such measures to accomplish that end as were not inconsistent with the act of July 1, 1902.

The decision of the court below is against the weight of evidence, and without authority of law.

*Mr. Assistant Attorney General Fowler* for the United States:

The act of the Philippine Commission is not invalid because of any direct effect upon the value of the coin, or any restriction upon the right of contract, nor does it deprive holders of coins of their property within the meaning of the act of Congress, by reducing the value of same; and if their value were reduced, the act was authorized by § 6, c. 980, act of March 2, 1903.

The value of these coins was not reduced by the legislation. They are declared by said act of Congress to be legal tender, unless otherwise provided, and they had the same purchasing power after the passage of the Philippine act as before.

These coins were circulating mediums and continually passed from hand to hand, and undoubtedly were not in the possession of plaintiff in error at the time the act was passed, and they, therefore, possessed precisely the same

value when seized as when they came into his posses-
sion.

Under the act of Congress, the Philippine Commission
had ample power to enact all reasonable legislation with
reference to the circulation of these coins.

By Art. I, § 8, c. 5, of the Constitution, Congress was
vested with the power to "coin money, regulate the value
thereof, and of foreign coin." The Fifth Amendment was
thereafter adopted, which, among other things, provided
that no person shall be "deprived of life, liberty, or
property without due process of law." Inasmuch as this
latter provision was incorporated into the Constitution
as an amendment, all the provisions contained in the
Constitution as first adopted must be consistent there-
with. This amendment repealed or abrogated, by impli-
cation, everything in the Constitution which was incon-
sistent with it, precisely as a subsequent act of Congress
repeals by implication all prior provisions of law which
are inconsistent therewith; although Congress, since the
adoption of the Fifth Amendment, has not possessed any
authority with reference to the coinage of money and
the regulation of its value, which is inconsistent with the
due process of law provision of said Amendment it has
always assumed without question to pass laws vesting
coins with the qualities of legal tender, depriving them of
such qualities, regulating the ratio of coinage, and in fact,
all character of laws which are deemed of advantage to
the public use of such coins. See acts of May 8, 1792,
1 Stat., c. 39, § 2; February 8, 1793, 1 Stat. 300, c. 5, § 2;
§ 5459, Rev. Stat.; Penal Code, 165; § 5189, Rev. Stat.;
Penal Code, 176.

The act of the Philippine Commission is not incon-
sistent with the due process of law clause of the organic
act of July 1, 1902, in that it restricts or places a limitation
upon the right of contract. *Patterson* v. *Bark Eudora*, 190
U. S. 169, 174; *Frisbie* v. *United States*, 157 U. S. 160, 165;

*United States* v. *Holliday,* 3 Wall. 407; *United States* v. *Forty-three Gallons of Whiskey,* 93 U. S. 188; *Buttfield* v. *Stranahan,* 192 U. S. 470, 493.

The act of the Philippine Commission was an authorized exercise of the police power. *American Ins. Co.* v. *Canter,* 1 Pet. 511, 542; *Leitensdorfer* v. *Webb,* 20 How. 176, 177.

Under instructions to the Philippine Commission signed by President McKinley on April 7, 1900, Comp. Acts Phil. Comm., pp. 10–15, and the act of July 1, 1902, the commission is vested with full power of legislating, except as restricted by acts of Congress. Manifestly it may exercise the police power whenever it can be exercised by the legislature of a State.

The case is here on writ of error, and this court will not, therefore, review the evidence. *Behn* v. *Campbell,* 205 U. S. 403. The decision is not against the weight of evidence.

Mr. Justice Lurton delivered the opinion of the court.

The plaintiff in error has been convicted of the offense of "exporting from the Philippine Islands Philippine silver coin" in violation of Philippine law No. 1411, being §§ 1998 and 1999, Compiled Acts of the Philippine Commission, title 3, chapter 194. Sections 1 and 2 of law No. 1411 read as follows:

"Sec. 1. The exportation from the Philippine Islands of Philippine silver coins, coined by authority of the act of Congress approved March 2nd, 1903, or the bullion made by melting or otherwise mutilating such coins, is hereby prohibited, and any of the aforementioned silver coins or bullion which is exported or of which the exportation is attempted subsequent to the passage of this Act and contrary to its provisions, shall be liable to forfeiture, under due process of law, and one-third of the sum or value of the bullion so forfeited shall be payable to the person upon whose information, given to the proper au-

thorities, the seizure of the money or bullion so forfeited. is made, and the other two-thirds shall be payable to the Philippine Government and accrue to the gold standard fund. Provided, That the prohibition herein contained shall not apply to sums of P. 25.00 or less, carried by passengers leaving the Philippine Islands.

"SEC. 2. The exportation or attempt to export Philippine silver coin or bullion made from such coins from the Philippine Islands, contrary to law, is hereby declared to be a criminal offense, punishable, in addition to the forfeiture of the said coins or bullion as above provided, by a fine not to exceed P. 10,000.00, or by imprisonment for a period not to exceed one year, or both, in the discretion of the court."

We may pass over the assignments of error which challenge the sufficiency of the evidence to warrant a conviction, inasmuch as it is not contended that there was no evidence. This is a writ of error, and upon such a writ the error to be considered must be confined to error of law.

The substantial question is as to whether a law which prohibits the exportation of Philippine silver coin from the Philippine Islands is a law which deprives the owner of his property in such coins without due process of law, in violation of that prohibition of the organic act of July 1, 1902, which provides that "no law shall be enacted in said islands which shall deprive any person of life, liberty or property without due process of law." Act of July 1, 1902, c. 1369, § 5, 32 Stat. at Large, 691, 692. The authority for the law is found in the same act of Congress, §§ 76 et seq., 32 Stat. at Large, 710, which authorized the Philippine government to establish a mint in the city of Manila for coinage purposes and to enact laws for its operation, and for the striking of certain coins. By the later act of Congress of March 2, 1903 (c. 980, 32 Stat. at Large, 952), it was provided that the gold peso, con-

sisting of 12.9 grains of gold, nine-tenths fine, should be the unit of value in the islands. The second section of that act provided as follows:

"That in addition to the coinage authorized for use in the Philippine Islands by the act of July first, nineteen hundred and two, entitled 'An act temporarily to provide for the administration of the affairs of civil government in the Philippine Islands, and for other purposes,' the government of the Philippine Islands is authorized to coin to an amount not exceeding seventy-five million pesos, for use in said islands, a silver coin of the denomination of one peso and of the weight of four hundred and sixteen grains, and the standard of said silver coins shall be such that of one thousand parts, by weight, nine hundred shall be of pure metal and one hundred alloy, and the alloy shall be of copper."

Section six of the same act of March 2, 1903, provided:

"That the coinage authorized by this act shall be subject to the conditions and limitations of the provisions of the act of July first, nineteen hundred and two, entitled 'An act temporarily to provide for the administration of the affairs of civil government in the Philippine Islands, and for other purposes,' except as herein otherwise provided; and the government of the Philippine Islands may adopt such measures as it may deem proper, not inconsistent with said act of July first, nineteen hundred and two, to maintain the value of the silver Philippine peso at the rate of one gold peso;"

In a subsequent part of the same section the issuance of certificates of indebtedness, bearing interest, was authorized as a specific measure for maintaining the parity between the silver and gold peso.

The law of the Philippine Commission, above set out, under which the conviction of the plaintiff in error was secured, must rest upon the provision of § 6, above set out, as a means of maintaining "the value of the silver

peso at the rate of one gold peso." Passing by any consideration of the wisdom of such a law prohibiting the exportation of the Philippine Islands silver pesos as not relevant to the question of power, a substantial reason for such a law is indicated by the fact that the bullion value of such coin in Hong Kong was some nine per cent greater than its face value. The law was, therefore, adapted to keep the silver pesos in circulation as a medium of exchange in the islands and at a parity with the gold peso of Philippine mintage.

The power to "coin money and regulate the value thereof, and of foreign coin," is a prerogative of sovereignty and a power exclusively vested in the Congress of the United States. The power which the government of the Philippine Islands has in respect to a local coinage is derived from the express act of Congress. Along with the power to strike gold and silver pesos for local circulation in the islands was granted the power to provide such measures as that government should "deem proper," not inconsistent with the organic law of July 1, 1902, necessary to maintain the parity between the gold and silver pesos. Although the Philippine act cannot, therefore, be said to overstep the wide legislative discretion in respect of measures to preserve a parity between the gold and silver pesos, yet it is said, that if the particular measure resorted to be one which operates to deprive the owner of silver pesos, of the difference between their bullion and coin value, he has had his property taken from him without compensation, and, in its wider sense, without that due process of law guaranteed by the fundamental act of July, 1902.

Conceding the title of the owner of such coins, yet there is attached to such ownership those limitations which public policy may require by reason of their quality as a legal tender and as a medium of exchange. These limitations are due to the fact that public law gives to such coinage a value which does not attach as a mere conse-

quence of intrinsic value. Their quality as a legal tender is an attribute of law aside from their bullion value. They bear, therefore, the impress of sovereign power which fixes value and authorizes their use in exchange. As an incident, the Government may punish defacement and mutilation and constitute any such act, when fraudulently done, a misdemeanor. Rev. Stat., §§ 5459, 5189.

However unwise a law may be, aimed at the exportation of such coins, in the face of the axioms against obstructing the free flow of commerce, there can be no serious doubt but that the power to coin money includes the power to prevent its outflow from the country of its origin. To justify the exercise of such a power it is only necessary that it shall appear that the means are reasonably adapted to conserve the general public interest and are not an arbitrary interference with private rights of contract or property. The law here in question is plainly within the limits of the police power, and not an arbitrary or unreasonable interference with private rights. If a local coinage was demanded by the general interest of the Philippine Islands, legislation reasonably adequate to maintain such coinage at home as a medium of exchange is not a violation of private right forbidden by the organic law. Obviously, if the Philippine government had power to prohibit the exportation or melting of Philippine silver pesos, it had the power to make the violation of the prohibition a misdemeanor. The proceedings for the enforcement of the law included the ordinary process in criminal cases lawful in the islands and not forbidden by the act of July, 1902.

*Judgment affirmed.*