HARRY RADER, Respondent, v. MAURICE SIMMONS, Individually and as Property Clerk of the Police Department of the City of New York, Appellant.*

Second Department, June 22, 1942.

* Affg. 178 Misc. 137.

416

*James Hall Prothero* [*William C. Chanler*, Corporation Counsel, *Fred Iscol* and *Nathan B. Silverstein* with him on the brief], for the appellant.

*Arthur Morris*, for the respondent.

JOHNSTON, J. The action is in replevin to recover moneys plaintiff claims he owns and which he alleges the defendant, property clerk of the police department of the city of New York, wrongfully detains. The facts, which are not in dispute, may be summarized, briefly, as follows: On January 31, 1941, two police officers entered plaintiff's apartment. Plaintiff and one Basso were present. The officers found in a box, which they opened with a key furnished by plaintiff, 10,000 slips of paper containing about 105,000 numbers, representing policy bets on " Mutual Horse Race Policy." There were also in the apartment an adding machine, a metal box containing approximately $50.50 in small coins, and a book containing entries showing that plaintiff employed fifteen policy collectors, whose average daily collections totaled between $300 and $400. The officers searched plaintiff and, in addition to a number of policy slips, they removed from his pocket two rolls of bills totaling $962, which plaintiff said he had that day drawn from a bank for a friend. The officers state, and plaintiff does not deny, that he admitted he was a policy banker and that Basso was his employee. Plaintiff and Basso were arrested, charged with violating section 974 of the Penal Law, *i. e.*, maintaining a room for policy playing and possessing policy slips, and also with violating section 580 of the Penal Law, *i. e.*, conspiracy to commit a crime. The officers took possession of the articles and the moneys. Thereafter plaintiff and Basso pleaded guilty to violating section 974 of the Penal Law, as charged, and paid the fines imposed. The conspiracy charge was dismissed.

The moneys, totaling $1,012.50, were delivered to defendant. who retains them, although plaintiff demanded their return. Thereupon plaintiff instituted this action. The answer, in addition to certain denials with which we are not concerned, contains two affirmative defenses: *First*, it is alleged that under the provisions of section 435–4.0 of chapter 18 of the Administrative Code of

the City of New York, defendant, as property clerk of the police department, was and is the lawful custodian of the moneys in suit and is retaining them in the " judicial " discharge of his duties; and *second*, it is alleged that the moneys in suit " are gambling moneys and were the proceeds of crime, and were held and used in violation of law and in a criminal enterprise, and plaintiff has no lawful property right therein."

Plaintiff's motion for summary judgment was denied by the City Court of the City of New York, County of Queens. The Appellate Term reversed the order and granted the motion. Defendant appeals.

It is conceded that as an incident to plaintiff's arrest for violating section 974 of the Penal Law the police were justified in seizing the money upon his person and in his premises for use as evidence upon the trial. The complaint does not charge a wrongful taking, but a wrongful detention.

Defendant seeks to justify his retention of the moneys in question on the theory that they were taken from plaintiff and removed from his establishment at the time he was arrested and charged with a crime to which he pleaded guilty and, therefore, they are the avails of his criminal conduct and he may not recover them. But there is no competent proof that the moneys are the proceeds of crime. The most that may be gleaned from the opposing affidavits is that one of the police officers " believes" the moneys represent policy collections. Such belief, even though, as the affiant states, based on " his experience and his observations," is not sufficient to entitle defendant to a trial of the issues. (Rules Civ. Prac. rule 113.) Assuming, however, that they are " gambling moneys," representing illegal policy collections, I know of no authority, statutory or otherwise, for their retention by the defendant.

Section 971 of the Penal Law (keeping gambling apparatus in certain premises) provides: " It is unlawful to keep or use any table, cards, dice or any other article or apparatus whatever, commonly used or intended to be used in playing any game of cards or faro, or other game of chance, upon which money is usually wagered, * * *."

Section 977 (seizure of gambling implements) provides that the arresting officer is " authorized and required to seize any table, cards, dice or other apparatus or article, suitable for gambling purposes, found in the possession or under the control of the person so arrested, and to deliver the same to the magistrate before whom the person arrested is required to be taken."

Section 978 (gambling implements to be destroyed or delivered to the district attorney) provides that the magistrate must " determine the character of the thing so delivered to him, and whether it was actually employed by the defendant in violation of the provisions of this article; and if he finds that it is of a character suitable for gambling purposes, and that it has been used by the defendant in violation of this article, he must cause it to be destroyed, or to be delivered to the district attorney of the county in which the defendant is liable to indictment or trial, as the interests of justice may, in his opinion, require."

Section 979 (gambling implements to be destroyed upon conviction) provides: " Upon the conviction of defendant, the district attorney must cause to be destroyed every thing suitable for gambling purposes, in respect whereof the defendant stands convicted, and which remains in the possession or under the control of the district attorney."

It will be observed that the word " money " nowhere appears in the statutes, which specifically refer to articles, apparatus and implements suitable for gambling purposes. This court, in defining similar words used in the Penal Code, said: " A ' device or apparatus for gambling ' is a device or apparatus designed for carrying on the actual gambling — for determining whether the player is to win or lose, like the wheel of fortune in its manifold modifications, and contrivances of that sort. * * * This is the test, whether the implement or device is used in determining who shall win or lose, whether it is an integral part of the actual gambling." (*People* v. *Engeman,* 129 App. Div. 462, 466.)

Obviously money does not come within this definition, nor is it included under the classification of other " apparatus or article, suitable for gambling purposes," within the meaning of the statutes.

The Supreme Court of Oklahoma, in construing identical statutes, held that money seized by a sheriff in a raid on a gambling house may not be confiscated on the theory that it is an " article or apparatus suitable to be used for gambling purposes." (*Miller* v. *State ex rel. Holt,* 46 Okla. 674; 149 P. 364.)

Defendant, in an effort to justify his retention of the moneys, invokes section 435–4.0 of chapter 18 of the Administrative Code.

Paragraph 1 of subdivision a of section 435–4.0 defines the duties of the property clerk and directs he shall take charge of " all property alleged to be stolen or embezzled, and which may come into the possession of the police, and all property taken from the person of a prisoner, and all property or money alleged or supposed to have been feloniously obtained or which shall be lost or abandoned, and which shall be taken into the custody of any member of the force * * *."

Subdivision b provides for the return to the " person accused " of property or money taken from him and " alleged to have been feloniously obtained, or to be the proceeds of crime," after an adjudication by the magistrate that the person arrested is innocent of the offense alleged and that the property rightfully belongs to him.

Subdivision c provides that such property or money claimed by persons other than the person arrested shall remain in the custody of the property clerk until the discharge or conviction of the person accused and until lawfully disposed of.

Subdivision d provides that " All property or money taken on suspicion of having been feloniously obtained, or of being the proceeds of crime, and for which there is no other claimant than the person from whom such property [was taken], * * * shall be transmitted, as soon as practicable, to the property clerk to be registered and advertised in the City Record for the benefit of all persons interested, and for the information of the public, * * *."

Paragraph 1 of subdivision e provides that " If the property stolen or embezzled be not claimed by the owner before the expiration of six months from the conviction of a person for stealing or embezzling it, such property, and * * * moneys, * * * that shall remain in the custody of such property clerk for the period of six months without any lawful claimant thereto, * * * may be sold at public auction * * * and the proceeds of such sale shall be paid into the police pension fund."

Defendant contends that under the above provisions of the Administrative Code only the original player or bettor, upon showing he is a lawful claimant, may recover the moneys in suit, and plaintiff, having pleaded guilty to violating section 974 of the Penal Law, is not a lawful claimant. This contention is without merit. Reading the section as a whole, it seems clear that it merely prescribes the duties of the property clerk. It does not authorize him, or the police department through him, to confiscate gambling moneys. To hold otherwise would, in effect, be enlarging or superseding the Penal Law, which specifically enumerates the " gambling implements " which may be seized and destroyed and which, as heretofore indicated, does not include " gambling moneys." Nor is the section susceptible of the interpretation urged by defendant that " gambling moneys " are the " proceeds of crime " and can be recovered only by the original bettor or player. The clause " property or money taken on suspicion of having been feloniously obtained, or of being the proceeds of crime, and for which there is no other claimant than the person

from whom such property [was taken]," refers to stolen or embezzled property and never was intended to and does not include " gambling money."

Moreover, the moneys in suit are not the proceeds of the crime with which plaintiff was charged and to which he pleaded guilty. In brief, section 974 of the Penal Law provides that a person is a common gambler and guilty of a misdemeanor if he (1) keeps, occupies or uses a place or apparatus for playing policy; (2) delivers or receives money in playing policy; or (3) has in his possession policy slips or memoranda. Plaintiff was charged with, and pleaded guilty to, violating the statute in that he maintained a room for policy playing and possessed policy slips. He was not charged with, nor did he plead guilty to, delivering or receiving money in playing policy.

Defendant also contends that, aside from the provisions of the Administrative Code, under well-settled principles plaintiff may not recover the moneys in question. In support of this contention defendant cites *Riggs* v. *Palmer* (115 N. Y. 506); *Watts* v. *Malatesta* (262 id. 80), and *Bamman* v. *Erickson* (288 id. 133). These cases have no application.

In *Riggs* v. *Palmer* (*supra*) the court, applying the maxim that no one shall be permitted to take advantage of his own wrong or to acquire property by his own crime, held that one could not obtain the benefits of a testamentary disposition where he had murdered the testator.

In *Watts* v. *Malatesta* (*supra*) it was held that under section 994 of the Penal Law a casual bettor may recover from a professional gambler moneys paid as wagers upon a series of horse races, but the latter has no right of action for and cannot offset his losses against the claim of the former.

In *Bamman* v. *Erickson* (*supra*) the court reiterated the rule enunciated in *Watts* v. *Malatesta* (*supra*) and pointed out that one may be a casual bettor even though he be an inveterate customer of a professional gambler as long as he has not been guilty of " ' betting and gambling organized and carried on as a systematic business,' in manner which the law ' makes criminal.' "

The order of the Appellate Term should be affirmed, with ten dollars costs and disbursements.

LAZANSKY, P. J., and CARSWELL, J., concur; TAYLOR and CLOSE, JJ., dissent and vote to reverse the order of the Appellate Term and to affirm the order of the City Court of the City of New York, County of Queens, with the following memorandum:

The action is in replevin to recover the sum of $1,012.50 which, it is alleged, the defendant, as property clerk of the police department of the city of New York, wrongfully detains from the plaintiff, the lawful owner thereof. The answer consists of denials and two affirmative defenses, but one of which is material here. In that defense it is alleged that the moneys in suit " are gambling moneys and were the proceeds of crime, and were held and used in violation of law and in a criminal enterprise, and plaintiff has no lawful property right therein." The plaintiff moved for summary judgment pursuant to rule 113 of the Rules of Civil Practice. It must be conceded from the facts alleged in the affidavits that the plaintiff was a " policy banker." It is inferable from the affidavits that the moneys taken from the plaintiff's person and from the premises wherein he conducted his illegal business were the proceeds derived from the sale of policy slips. This inference raises an issue of fact as to whether or not the moneys in suit are the " proceeds of crime." If they are, this plaintiff has no claim to them. (Penal Law, §§ 971, 977; N. Y. City Adm. Code, chap. 18, § 435–4.0, subds. a–e, inclusive.) The Administrative Code is to be read in connection with the Penal Law and, if upon a trial it appears that these moneys are the proceeds of crime, the complaint must be dismissed. (*Riggs* v. *Palmer*, 115 N. Y. 506; *Watts* v. *Malatesta*, 262 id. 80; *Bamman* v. *Erickson*, 288 id. 133.)

Order of the Appellate Term affirmed, with ten dollars costs and disbursements. [See 264 App. Div. 958; 265 id. 937.]