**PIN–BALL MACHINE, Serial No. 2334, et al.,**
**Appellants,**

v.

**STATE of Alaska, Appellee.**

No. 162.

Supreme Court of Alaska.

May 29, 1962.

Fred D. Crane (of Taylor & Crane), Fairbanks, for appellant.

Ralph E. Moody, Atty. Gen., John E. Havelock, Deputy Atty. Gen., Juneau, for appellee.

Before NESBETT, C. J., and DIAMOND and AREND, JJ.

AREND, Justice.

This is a proceeding in rem in which the state is seeking the forfeiture of six pinball machines. The libel of information alleges that the machines were used to conduct gambling in violation of section 65–13–18 A.C.L.A.1949 and that, under the provisions of section 4–2–1 A.C.L.A.1949, they are subject to seizure and forfeiture.[1]

The trial was had with commendable dispatch and the parties very sensibly stipulated that the case would be tried as to only one of the machines because the evidence would have been substantially the same for all of the machines.

The only testimony offered by the state at the hearing was that of a trooper of the state police. He testified that he. went to a bowling alley in Fairbanks for the purpose of playing a pinball machine on the premises to obtain evidence as to gambling. He played the machine for ten or fifteen minutes by inserting nickels into it. After the trooper had run up "a score of 10 games," he told the cashier present that he had ten games and wanted to quit. The cashier paid him fifty cents. We presume that the trooper was acting as an undercover man in plain clothes.

1. Applicable portions of the two statutes referred to in the text above will be set forth and discussed later in the opinion.

The appellant George Thompson, who had appeared as the respondent below and filed an answer alleging that the machines were not gambling devices and that "no gambling was engaged in on said machines," offered no evidence.

The trial court in a memorandum opinion found that the pinball machines in question were used as gambling instruments in that there was a pay-off made on each of the machines and concluded that the machines were "subject to seizure and forfeiture by virtue of the provisions of Section 4–2–1 A.C.L.A.1949." A decree was duly made and entered forfeiting all six machines to the state and directing their destruction by the service section of the state police. From that decree George Thompson has appealed.

The first question presented, as we see it, is whether section 4–2–1 A.C.L.A.1949, relative to seizure and destruction of gambling implements, is a law in Alaska.

Historically by section 9 of the 1912 Organic Act of Alaska,[2] Congress provided in part as follows:

"The legislative power of the Territory of Alaska shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States * * * nor shall the legislature or any municipality interfere with or attempt in any wise to limit the Acts of Congress to prevent and punish gambling, and *all gambling implements shall be seized by the United States marshal or any of his deputies, or any constable or police officer, and destroyed * * *.*" [Emphasis supplied.] [3]

This Section 9 appears not only in the Organic Act printed in the forepart of Alaska Compiled Laws Annotated 1949 but again as section 4–2–1 of that compilation. Then in 1951 the territorial legislature declared by statute:

"* * * the compilation of laws of Alaska which was authorized under Chapter 28, Session Laws of Alaska, 1947 * * * and entitled Alaska Compiled Laws Annotated, 1949, as set forth in the consecutively numbered sections thereof, is hereby adopted as the Code of Alaska, and said sections as therein published are hereby enacted as laws of the Territory of Alaska * * *." [4]

On January 3, 1959 statehood came to Alaska [5] and with it a new constitution which provided in article XV, section 1 thereof:

"All laws in force in the Territory of Alaska on the effective date of this constitution and consistent therewith shall continue in force until they expire by their own limitation, are amended, or repealed." [6]

2. 37 Stat. 512, 514, 515, 48 U.S.C.A. § 77 (1952).

3. The language of Section 4–2–1 with reference to the United States marshal and other law enforcement officers was in effect amended by S.L.A.1960, chapter 74, section 1, which provides:
   "The Commissioner of the Department of Public Safety, or any member of the Division of State Police designated by him, is hereby authorized to undertake and perform all of the obligations and duties imposed upon the United States Marshal and his deputies by the various statutes effective within the state and wherever such statutes make reference to the United States Marshal, and his deputies, such reference shall be construed to mean exclusively the Commissioner of the Department of Public Safety, or any member of the Division of State Police, or other police or peace officer designated by him."

4. S.L.A.1951, ch. 101, § 1.

5. Exec.Proc. No. 3269, 24 Fed.Reg. 81 (1959), 48 U.S.C.A. preceding § 21.

6. To the same effect, see section 8(d) of the Alaska Statehood Act, Pub.L. 85–508, July 7, 1958, 72 Stat. 339, 48 U.S.C.A. preceding § 21, which states:
   "Upon admission of the State of Alaska into the Union as herein provided, all of the Territorial laws then in force in the Territory of Alaska shall be and continue in full force and effect throughout said State except as modified or changed by this Act, or by the constitution of the

We hold that the provision of Section 4-2-1 requiring the seizure and destruction of all gambling implements was one of the "laws in force in the Territory of Alaska on the effective date of this constitution" and we can find no inconsistency between that law and our state constitution, nor has any such inconsistency been called to our attention.

Is the subject provision of Section 4-2-1 still the law in Alaska? The appellant Thompson maintains that it is not and in support of his position points to two subsequent statutes passed by the state legislature in 1960 as indicating a clear intent on the part of that body to no longer "abide by any of the provisions of the Organic Act restricting or prohibiting any form of gambling."

The first of these sanctions and authorizes the conduct of certain bingo games, raffles, ice pools, dog mushers' contests, fish derbys and contests of a skill of a bona fide nonprofit nature under permit from the Department of Revenue.[7] The other statute, chapter 142, S.L.A.1960, repealed and generally re-enacted sections 48-3-1 through 48-3-8 A.C.L.A.1949 which provided, among other things, for a tax on coin-operated amusement and gaming devices.

Chapter 142, S.L.A.1960 defines pinball machines under "coin-operated device class 2"[8] and then proceeds:

"(3) 'coin-operated device class 3' denotes any slot machine or other apparatus or device which operates or may be operated by means of insertion of a coin, token or similar object and which by strict dependence upon the element of chance, may deliver or may entitle the person playing or operating the machine to receive cash, premiums, merchandise or tokens. Devices and apparatus otherwise falling within the classification of subsection (2) of this section, even though not strictly dependent upon the element of chance shall be taxed according to the rate applicable to slot machines where the device or apparatus itself delivers cash directly to the person playing or operating the same."

The appellant Thompson concedes that these "permissive measures," as he calls them, have not specifically legalized any form of gambling, but his argument seems to be that the intent of the legislature not to prohibit gambling, but actually to permit it, may be implied from the statutes above considered. We find no such intent on the part of the legislature. In fact section 48-3-8 A.C.L.A.1949, as amended by section 8 of chapter 142, S.L.A.1960, states that the act shall not be construed in any way to legalize gambling, and section 2, chapter 27, S.L.A.1960 contains the special provision:

"This Act shall not be construed to authorize the use of any playing cards, dice, roulette wheels, coin-operated instruments or machines, or other objects or instruments used, designed, or intended primarily for gaming or

---

State, or as thereafter modified or changed by the legislature of the State. * * * *As used in this paragraph, the term 'Territorial laws' includes (in addition to laws enacted by the Territorial Legislature of Alaska) all laws or parts thereof enacted by the Congress the validity of which is dependent solely upon the authority of the Congress to provide for the government of Alaska prior to the admission of the State of Alaska into the Union * * *." [Emphasis supplied.]

7. S.L.A.1960, ch. 27.

8. Subdivision (2) of section 2, chapter 142, S.L.A.1960 reads:
"(2) 'coin-operated device class 2' denotes any pinball machine, including any bingo type coin-operated devices, horse race machine or any other apparatus or device which operates by means of insertion of a coin, token, or similar object and which, by embodying the elements of chance or skill, award free plays in any manner and which contain a device for releasing such free plays and a meter for registering or recording the plays so released, or with a provision for multiple coin insertion for increasing the odds. * * *"

gambling or any other method or implement not expressly authorized by the commissioner [of public revenue]."

We conclude that the provision of Section 4-2-1, requiring the law enforcement officers of Alaska to seize and destroy all gambling implements, is still the law of this state.

This brings us to the second question presented for review: Were the seized pinball machines "gambling implements" within the meaning of section 4-2-1 A.C.L.A.1949?

A gambling device, or "gambling implement" [9] as the term is employed in Section 4-2-1, we hold to be any tangible means, instrument or contrivance by which money may be lost or won as distinguished from the game itself.[10] The device need not be intended solely for gambling purposes. However, if it is used in such a way that money may be lost or won as a result of its use, then it becomes a gambling implement [11] and is subject to seizure and destruction under our statute.

In Ah Poo v. Stevenson,[12] the Oregon supreme court ruled:

"The fact that an implement, such as a table, is susceptible of lawful use, does not make it, as a matter of law, impossible that the article should be a gambling implement. It was a matter of proof whether, as the game is usually actually carried on, the utensil is used as a material instrument in ascertaining whether the player should win or lose. * * *"

We think that the Oregon rule is a proper one to apply in this case.

We note that the trial judge was careful to point out in his memorandum opinion that he was not holding that pinball machines with free game indicators are gambling instruments per se. He merely found that the six subject machines were *used* as gambling devices in that there had been an actual payoff in money for free games won and, therefore, they were subject to seizure and forfeiture.

Both in the court below and here on appeal the appellant Thompson insists that the state should not prevail because it failed to show that the subject pinball machines were used to conduct gambling in violation of section 65-13-18 A.C.L.A.1949, set forth in the margin.[13] He would have us apply the doctrine of ejusdem generis to the statutory words "where any banking or other

9. In Ah Poo v. Stevenson, 83 Or. 340, 163 P. 822, 824 (1917), it was held that a gambling implement and a gambling device are synonymous terms. We treat them as such in this case. See also Webster, Third New International Dictionary (1961), defining "implement" and its synonyms.

10. State v. Ayers, 49 Or. 61, 88 P. 653, 655, 10 L.R.A.,N.S., 992 (1907); Ex parte Williams, 127 Cal.App. 424, 16 P.2d 172 (1932).
In the text, to which this footnote is referenced, we have given only one of the commonly accepted definitions of gambling devices or gambling implements and we apply it in this case because there was an actual pay-off. The question was not presented in the court below whether the appellant Thompson's machines might also be considered gambling implements in other situations such as where free plays are won; so we need not determine that issue at this time.

11. See State v. Waite, 156 Kan. 143, 131 P.2d 708, 148 A.L.R. 874 (1942); State ex rel. Dussault v. Kilburn, 111 Mont. 400, 109 P.2d 1113, 135 A.L.R. 99 (1941).

12. Ah Poo v. Stevenson, note 9 supra.

13. The portion of section 65-13-18 A.C.L.A.1949, pertinent to the text provides:
"All houses, boats, boat-houses, buildings, rooms, and places of every description where gaming or gambling is carried on, or where any banking or other game is played with cards, dice, or any other device, whether the same be played for money, or for any checks, chips, credit, representing money, or other representative of value, or where unlicensed manufacture or sale of intoxicating liquor is allowed, or drinking thereof permitted, or where persons are permitted to resort for the purpose of gaming or gambling, and all implements or property used and kept in maintaining such places, are hereby declared to be common nuisances * * *."

game is played with cards, dice, or any other device." To put it simply, he contends that pinball machines cannot be classified as devices similar to cards or dice. On this point we join the trial court in concluding that, since the validity and applicability to this case of Section 4–2–1 have been judicially established, the additional reliance of the state upon Section 65–13–18 becomes superfluous.

The decree is affirmed.