ONE COCKTAIL GLASS; One Box Containing Canned Coca-Cola; One Bag Containing Assorted Cigarettes; One Box Containing 53 Six-Ounce Glasses; One Box Containing 62 Eight-Ounce Glasses; One Box Containing Whiskey; One Case Coca-Cola; One Box Containing Coca-Cola, Seven-Up and Beer; One Case Seven-Up; Two Cases Budweiser Beer; Three Cases Olympia Beer; One Case Coca-Cola; Assorted Notebooks; Bank Receipts; Assorted Checks (or equivalent United States Currency); One Box Containing Beer; One Box Containing Whiskey, Wine and Beer; One Box Containing Beer; One Box Containing Whiskey and Juices; One Circular Table; One Swivel Chair; Seven Bar Stools; and United States Currency in the Amount of Two Thousand One Hundred One Dollars and One Cent ($2,101.01), Appellants,

v.

STATE of Alaska, Appellee.

No. 2729.

Supreme Court of Alaska.

June 8, 1977.

---

Sandra K. Saville of Kay, Christie, Fuld & Saville, Anchorage, for appellants.

Dennis P. James, Asst. Dist. Atty., and Joseph D. Balfe, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

CONNOR, Justice.

This is an appeal from an order of the superior court forfeiting to the state money and a variety of other property seized in a police raid on a gambling establishment.[1] It requires us to address certain questions concerning what property may be forfeited pursuant to AS 11.45.040,[2] and under what circumstances such forfeiture may take place.

### I

On March 30, 1975, police entered an "A-frame" building in Valdez, where gambling

---

1. In the superior court, this case was captioned "*State v. One Crap Stick, et al.*" The crap stick, and certain other items, are no longer at issue on this appeal.

2. AS 11.45.040 reads:

"The commissioner of public safety, a member of the division of state police, or a police or peace officer designated by the commissioner shall seize and destroy a gambling implement."

was in progress. They arrested Gerald Parent, John Salazar, Margaret Abraham and Kenneth Messenger. Subsequently all four defendants plead nolo contendere to charges of conducting a gambling game (AS 11.60.140). Each defendant was fined $500.

The state then initiated an in rem proceeding seeking the forfeiture of all items seized when the police entered the building on March 30. The four defendants in the criminal cases (hereinafter "claimants") claimed approximately $8,000 in currency and checks, and various furniture, liquor, soft drinks, cigarettes, glassware, and papers. No one claimed the crap stick, dice, chips, cards, dice table, blackjack table, or a book entitled "Casino Management." These items were forfeited without opposition and are not involved in this appeal.

The only witnesses at the trial were two state troopers, Gerald B. Smith and Patrick M. Shely. Smith had gambled at the establishment while operating undercover. Both officers took part in the arrests and seizure. Their testimony showed that the A-frame building had two floors. On the ground floor was a large room with a blackjack table and a crap table, with stools and folding chairs around each, and a circular table that was not used for gambling but was covered by a tablecloth and had a television set on it. Also on the ground floor was a kitchen area with a stove; a sink; a refrigerator containing beer, orange juice, and some food; shelves with liquor, a dishrack, glasses, plastic cups and plates, and a plastic bowl on them; and boxes of cigarettes, glassware, soft drinks, and beer against the wall. There was also a bathroom with a tub and shower. On the upper floor were two rooms, one with one bed and the other with two beds. Each room contained a nightstand, a lamp, and open suitcases. On one nightstand were dice, coins, checks, a pistol, and some personal letters. In the room with the single bed was a closet with coats and clothes hanging in it. There were no gambling tables upstairs.

Claimant Parent acknowledged that he was living in the building, and Ron Noble said he had stayed there occasionally.

Among the items seized was approximately $8,000 in cash and checks.[3] In an unspecified location $256 was found. Parent had $1,303.95 in his left front pocket, as well as $140 in his right front pocket, and $1,100 in a wallet in his back pocket. A marked $20 bill, which the police had used as bait money, was among the money found in Parent's wallet. During the tagging of the items seized, Parent stated that the money in his front pockets was the bank for blackjack and craps and that the money in the wallet was his own. He asked that a worn $100 bill found in his wallet be tagged because it was definitely his. The sum of $227.16 was found inside a coat pocket in the upstairs clothes closet and $74.53 was found beside the book "Casino Management" in an open suitcase upstairs. During the raid, no one other than Parent indicated any of the money was anyone's personal property. Except for some that came from Parent, most of the checks were seized from the upstairs closet.

Witness Smith, an investigator for the Alaska State Troopers, went, with marked money, once on March 28, once on March 29 and once on March 30 to the A-frame to obtain evidence of gambling. On March 28, four people, including himself, were gambling; at 8 p.m. March 29 only himself; and at midnight March 30, one other person. The first time he purchased chips, the money he paid was put behind the

---

**3.** The sum of the cash involved in this proceeding is not entirely certain. The caption of the state's pleadings below referred to $2,101.01. The money referred to and introduced into evidence at the hearing totals $3,101.64. Subtracting the $100 bill which Judge Moody did not order forfeited and which is not at issue on this appeal, and the $20 bill to which Parent abandoned his claim, leaves a total of $2,981.64

at issue. The $2,981.64 figure includes the $1100 found in Parent's wallet, which apparently included an unspecified sum in checks as well as currency.

The total sum of the checks nowhere appears in the record. Claimants' counsel, in oral argument in the court below and in the brief on appeal, gave a figure of approximately $5,000 without citation.

blackjack table by Ron Noble, the second time into Parent's front pocket, and the third time behind the blackjack table. When Smith cashed out, Parent pulled a roll of bills from his right front pocket and gave Smith three $20 bills. Drinks and cigarettes were given free to gamblers.

The trial court concluded that the building was used as a gambling establishment and that all the items seized were integrally connected with the gambling activity. With the exception of the worn $100 bill, it ordered the items forfeited and disposed of at a public sale. The claimants have appealed.

The claimants allege four errors in the proceedings below: (1) that AS 11.45.040 does not permit the forfeiture of money; (2) that the state did not prove that the claimed items were integral to gambling activity; (3) that the forfeiture statute as applied violates the double jeopardy clauses of the state and federal constitutions; and (4) that the trial judge should have prepared written findings of fact and conclusions of law.

## II

■ Does AS 11.45.040, which provides that police officers shall "seize and destroy a gambling implement," authorize the decision below insofar as it forfeited to the state about $8000 in currency and checks? We hold that it does not.

Initially, we note that shortly before statehood, the United States District Court for the District of Alaska reached the opposite conclusion, in construing a predecessor statute which did not differ in substance from AS 11.45.040. *United States v. $3,236,* 167 F.Supp. 495, 497 (D.Alaska 1958).[4] The district court relied on a number of cases from other states,[5] without discussing the differences in the texts of the various state statutes. The district court concluded that its decision was in accord with the majority rule with respect to statutes dealing with gambling devices and machines—that money may be forfeited if it is integrally connected with gambling.[6]

Cases from other jurisdictions are of limited usefulness because forfeiture is a statutory procedure and state statutes differ greatly, both in what may be forfeited and in the factual showing which must be made to justify forfeiture.

■ Forfeitures are not favored in the law. *Sakow v. J. E. Riley Inv. Co.,* 9 Alaska 427, 446 (D.Alaska 1939). A statute which imposes a forfeiture must be strictly construed. *Oddo v. Hedde,* 101 Cal.App.2d 375, 225 P.2d 929, 934 (1951); *People v. One 1939 Plymouth 6 Coupe,* 41 Cal.App.2d 559, 107 P.2d 266, 267 (1940). Its effect cannot be extended beyond its plain, ordinary, and usual meaning, applied with common sense. *Commonwealth v. Blythe,* 178 Pa.Super. 575, 115 A.2d 906, 909 (1955).

■ Statutes providing for the seizure and destruction of gambling devices are considered penal in nature. 3 Sutherland, *Statutes and Statutory Construction* § 59.02 (Sands ed. 1974); *State v. Lesnick,* 84 Wash.2d 940, 530 P.2d 243, 247 (1975); *State v. Fitzpatrick,* 89 Idaho 568, 407 P.2d 309, 311 (1965). *See Graybill v. State,* 545 P.2d 629, 631 (Alaska 1976). Therefore, like

---

4. After considering the merits, the court dismissed the case because it was barred by the statute of limitations.

5. The leading case permitting the forfeiture of money is *Rosen v. Supt. of Police,* 120 Pa.Super. 59, 181 A. 797 (1935). Most of the other cases rely only on *Rosen.*

6. Appellants' reply brief adopts a totally different interpretation of AS 11.45.040—that it requires immediate and summary physical destruction of gambling implements by the police without judicial proceedings, and therefore can only apply to "objects which are intrinsically, unalterably, and exclusively usable only for activities that the law deems to be immoral and criminal." They cite no cases so interpreting AS 11.45.040 or any other statute, and our research has revealed none. Annot., 14 A.L. R.3d 366 (1967), entitled "Constitutionality of Statutes Providing for Destruction of Gambling Devices," lists many cases, all of which appear to include at least a summary judicial proceeding or a search warrant. Even if a police self-help statute would be constitutional, a question which we do not address, that does not mean that AS 11.45.040 is such a statute.

other penal statutes, they "should be strictly construed against the government or parties seeking to exact statutory penalties and in favor of persons on whom such penalties are sought to be imposed." *Statutes and Statutory Construction, supra* at § 59.03.[7]

AS 11.05.130 also supports strict construction of this statute:

"A conviction of a person for a crime does not work a forfeiture of property, except in cases where a forfeiture is expressly provided by law. . . ."

What is "expressly provided by law" is the seizure and destruction of a "gambling implement." We have on two occasions considered the definition of "gambling implement" in AS 11.45.040 and its predecessor, both times in cases concerning pinball machines. In *Pin-Ball Machine v. State*, 371 P.2d 805, 808 (Alaska 1962), we defined it as

"any tangible means, instrument or contrivance by which money may be lost or won as distinguished from the game itself. The device need not be intended solely for gambling purposes. However, if it is used in such a way that money may be lost or won as a result of its use, then it becomes a gambling implement and is subject to seizure and destruction under our statute." (footnotes omitted).

In *State v. Pinball Machines*, 404 P.2d 923, 925 (Alaska 1965), we defined it as "some tangible thing which is used or mainly designed or suited for gambling." In those cases we held pinball machines subject to forfeiture under the statute. Those definitions are of little help in considering the question before us.

We also note the difference between the gambling forfeiture statute and this state's narcotics and fish and game forfeiture statutes, AS 17.12.130 and 16.05.195. Both of those statutes define broadly the property subject to forfeiture, to include "accessories" and "paraphernalia," respectively, used to violate the law. Furthermore, both of them provide optional dispositions for forfeited property, unlike the gambling statute which mandates destruction of property seized.

Other courts have held that money does not come within the definition of a "device or apparatus for gambling;" that is, it is not a "device or apparatus designed for carrying on the actual gambling—for determining whether the player is to win or lose. . . ." *Rader v. Simmons*, 264 App.Div. 415, 35 N.Y.S.2d 573, 576 (1942). *Accord, Miller v. State*, 46 Okl. 674, 149 P. 364, 365 (1915), in which the court noted the absurdity of applying a statute that authorized the seizure and destruction of "articles or apparatus suitable to be used for gambling purposes" to money:

". . . whatever the statute authorizes to be confiscated must be destroyed. This is the only disposition that can be made of such property. We are hard to convince that even our most opulent legislators could have intended to so treat a commodity so widely and universally useful and so strangely hard to acquire."

AS 11.45.040 has the same requirement. It provides for seizure *and* destruction of a gambling implement. According to the terms of the statute, if money is permitted to be seized, it must be destroyed.[8] But the state does not have the constitutional power

7. The state argues to the contrary, relying on *United States v. Stowell*, 133 U.S. 1, 12, 10 S.Ct. 244, 33 L.Ed. 555, 558 (1890), for the proposition that the rule of strict construction should not be applied to forfeiture laws. But in our recent decision in *Graybill v. State, supra*, we concluded that forfeitures, even when civil in form, are quasi-criminal in substance. Further, we note that the reason for more liberal construction proffered in *Stowell*, that these statutes are enacted for the public good and to suppress public wrong, would seem to apply equally to penal statutes, which indisputably must be construed in favor of the accused.

8. The trial court in the case at bar refused to do so, stating:

"Of course, now I'm not going to order the destruction of the money. I'm not going to order destruction of . . . anything that can be useful. It will be handled in the usual manner of disposition at public sale."

The disposition ordered, however, is contrary to the very statute upon which the state relies for its forfeiture.

to destroy money. This power is an incident of the power granted Congress by the Constitution "[t]o coin Money, [and] regulate the Value thereof." U.S.Const., Art. I, sec. 8. As such, it is exclusively federal and may not be exercised by the states. *New Jersey v. Moriarity*, 268 F.Supp. 546, 563 n. 27 (D.N.J.1967); *Spagnuolo v. Bonnet*, 16 N.J. 546, 109 A.2d 623, 630 (1954); *see* 31 U.S.C. § 420 *et seq.*; *Ling Su Fan v. United States*, 218 U.S. 302, 31 S.Ct. 21, 54 L.Ed. 1049 (1910). Congress has made the destruction of currency and coins a criminal offense. 18 U.S.C. §§ 331, 333.

The Minnesota Supreme Court, in reversing an order for the sale of scrap materials after the destruction of slot machines and the turning over of the proceeds and of the money found within the machines to the county treasurer, said:

> "The purpose of the statute is to destroy gambling devices so that they cannot be used. It is not its purpose to get for the county the proceeds of gambling nor the junk value of the gambling devices." *State v. Falgren*, 176 Minn. 346, 223 N.W. 455, 456 (1929).

Gambling is a misdemeanor, under AS 11.60.140, carrying a maximum fine of $500. The claimants have been convicted of this misdemeanor, and sentenced to pay the maximum fine. The financial penalty would be multiplied many times above the statutory maximum were the $8,000 in money also to be forfeited. See *State v. One Porsche 2-Door*, 526 P.2d 917 (Utah 1974), in which the court refused to order forfeiture of a $10,000 automobile because of its use in committing a misdemeanor drug offense for which the maximum fine was $299. *Accord, Krug v. Board of Chosen Freeholders*, 3 N.J.Super. 22, 65 A.2d 542, 545 (1949) (concurring opinion).[9]

All these factors lead us to the conclusion that money is not forfeitable under AS 11.45.040, and that the portion of the judgment ordering the forfeiture of cash and checks was erroneous.

### III

■ The trial court also ordered the forfeiture of various glassware, soft drinks, alcoholic beverages, cigarettes, and furniture which were seized on the premises. We also hold that the forfeiture of these articles was error.

■ An item which has non-gambling uses can be a "gambling implement" subject to forfeiture under the statute, but only if the state proves that it is used as a material or integral part of the gambling activity. *Pin-Ball Machine v. State*, 371 P.2d 805, 808 (Alaska 1962); *United States v. $3,236*, 167 F.Supp. 495, 498 (D.Alaska 1958); Annot., 19 A.L.R.2d 1228, 1232–34 (1951) (citing numerous cases). In *Pin-Ball Machine*, we held that an object is a material or integral part of the gambling activity only when it is a means by which it is determined whether the player wins or loses, citing *Ah Poo v. Stevenson*, 83 Or. 340, 163 P. 822, 824 (1917). Applying that test, we affirmed an order forfeiting a number of pinball machines to the state.

While the glassware, beverages, cigarettes, and furniture at issue here were used to make the gambling establishment a more pleasant and comfortable place for its customers, they were not used in the gambling game per se.[10] That is, they were not an element in the decision whether a gambler won or lost. This was one of the factors which prompted our decision, in part II of this opinion, that money is not proper-

---

**9.** Similarly, if a gambler bet his automobile or home as a stake in a gambling event, and the automobile or home were regarded as a gambling implement, there would be no legal impediment to the destruction of those valuable pieces of property. We will not presume that the legislature intended such a result.

**10.** *See also State v. Pinball Machines*, 404 P.2d 923, 925 (Alaska 1965). Its definition of "gam-

bling implement" is quoted in part II of this opinion: "some tangible thing which is used or mainly designed or suited for gambling." None of the articles at issue here is mainly designed or suited for gambling, and, as noted in the text, the phrase "used . . . for gambling" has been construed to mean used as a material or integral part of the gambling game.

ly the subject of forfeiture under AS 11.45.-040. With respect to these other items, we also hold that the trial court erred in ordering their forfeiture.[11]

■ Finally, "assorted notebooks" and "bank receipts" are among the items at issue. There was no testimony mentioning them at the hearing. The state not having presented evidence of their connection with gambling, the decision to forfeit them must be set aside.[12]

REVERSED.

BURKE, J., concurring separately.

ERWIN, J., dissenting.

BURKE, Justice, concurring separately.

With regard to the money found in Parent's front pockets, totalling $1443.95, I reluctantly concur in the view that such money, along with the rest of the money seized, must be returned. That money, according to Parent, formed the bank for the blackjack and crap games. Such being the case, I would have no trouble concluding that it was a gambling implement if it were not for certain provisions of federal law. In the absence of those provisions, I would apply the reasoning expressed in *Pratico v. Rhodes*, 32 N.J.Super. 178, 108 A.2d 97, 99 (1954), where the court said:

> Where money is earmarked and segregated as part of an illegal gambling operation it then constitutes a gambling device subject to seizure. (citations omitted)

*Accord Spagnuolo v. Bonnet*, 16 N.J. 546, 109 A.2d 623 (1954).

However, AS 11.45.040, in clear and simple terms, *commands the destruction* of "gambling implements" seized under the authority thereof. No mention is made of forfeiture or other disposition. Yet, as stated in *Spagnuolo v. Bonnet, supra*, 109 A.2d at 630;

> [T]he State . . . has not the constitutional power to destroy [money]. Such power is an incident of the federal power 'to coin money, [and] regulate the Value thereof, * * *,' Art. I, sec. 8, U.S. Const.; *Ling Su Fan v. United States*, 218 U.S. 302, 31 S.Ct. 21, 54 L.Ed. 1049 (1910); 31 U.S.C.A. § 420 et seq.

The destruction of money may even be a federal crime. *See* 18 U.S.C. §§ 331, 333.

I think we must assume that the legislature was aware of the federal laws concerning the treatment of money when it enacted AS 11.45.040. Since the destruction of money is beyond the power of the state, I am forced to conclude that the legislature did not intend money to be included within the meaning of the phrase "gambling implement" as used in AS 11.45.040. Thus, I see no alternative but to return Parent's money to him. While It seems to me that the law should permit a forfeiture of such money, that decision is one for the legislative branch rather than this court.

In all other respects, I concur.

ERWIN, Justice, dissenting.

I dissent from that portion of the majority opinion which holds that the $1,303.95 found in Parent's left, front pocket, the $140.00 found in his right, front pocket, and the $1,100.00 found in the wallet located on his person are not subject to seizure and destruction as gambling implements within the meaning of AS 11.45.040, which reads:

> The commissioner of public safety, a member of the division of state police, or a police or peace officer designated by the commissioner shall seize and destroy a gambling implement.

I reach this result on the basis of the admission made by Parent at the time of his

---

11. The trial court concluded that, as a matter of common sense, the building was a gambling establishment from top to bottom. While the evidence may support that conclusion (a police officer testified that it seemed to be principally a business establishment and not a residence), the conclusion does not justify forfeiture of everything found within the building.

12. In view of our disposition of the first two questions presented, it is not necessary to address the issues of double jeopardy and whether there should have been written findings and conclusions.

arrest that the money in his front pockets was the "bank" for the craps and blackjack games. In addition the discovery of police bait money in Parent's wallet indicates that this money as well was being used as the "bank" for the games of chance.

I believe that as a matter of statutory construction, a two-step analysis is required. First it is necessary to determine whether the money in question is a "gambling implement" within the meaning of AS 11.45.040. If the money is a gambling implement, then the words "seize and destroy" used in the statute must be analyzed.

Turning first to the question of whether the money is a "gambling implement," I view the reasoning of the New Mexico Supreme Court in *State v. Johnson*, 52 N.M. 229, 195 P.2d 1017 (1948), to be persuasive. In that case the New Mexico court found that money, once placed in a slot machine, became a "component part" of such gambling device, and thus became gambling paraphernalia, subject to seizure.[1] I believe that this same reasoning is applicable to the statute in question here, which speaks of "a gambling implement." To the facts in the case at bar, I would apply the reasoning of the *Johnson* case, under which the crucial inquiry is whether the subject money had become a component part of the prohibited game of chance.

In *Johnson* the game involved was the slot machine. As that game is played, the player places a coin in the slot, pulls the lever, and his chance of winning is determined by various combinations of symbols which appear before him. The game is one between man and machine, and the money bet is placed in the machine. Craps and blackjack are somewhat different, however; these games pair man against man. When there are a number of players, each player bets against the dealer, who is the agent of the house "bank."

In the gaming capitals of the world, house banks are often luxurious rooms located away from the bustle of active gaming. Not so in this case. The "bank" in Valdez was the pockets of the dealer, Mr. Parent. As humble as this "bank" might have been, it nonetheless held the money that was being bet against by the players who had lain their bets on the table. Just as the money in a slot machine which pays off a successful player is part of the slot machine, so the money in the "bank" which is being bet against in craps or blackjack is part of that game. I believe that the money in a craps or blackjack "bank" is part of the game because it provides the stake for which the players bet. Once so classified, it follows that the money in the Valdez "bank" was indeed a gambling implement within the meaning of AS 11.45.040.

We have defined a "gambling implement" within the meaning of an earlier version of AS 11.45.040 as:

> any tangible means, instrument, or contrivance by which money may be lost or won as distinguished from the game itself. The device need not be intended solely for gambling purposes. However, if it is used in such a way that money may be lost or won as a result of its use, then it becomes a gambling implement and is subject to seizure and destruction under our statute.[2]

I believe that this reasoning should be applied here. Once the money was placed in Parent's pockets, it became a distinct and separate tangible object, i. e. the "bank." The "bank" itself was used in such a way that money could be lost or won as a result of its use, just as surely as use of the cards could produce a win or loss.[3]

---

**1.** 195 P.2d at 1020.

**2.** *Pin-Ball Machine v. State*, 371 P.2d 805, 808 (Alaska 1962) (footnotes omitted).

**3.** This reasoning is supported by the language of the majority opinion herein, which states:

> An item which has non-gambling uses can be a "gambling implement" subject to forfeiture under the statute, but only if the state

proves that it is used as a material or integral part of the gambling activity. *Pin-Ball Machine v. State*, 371 P.2d 805, 808 (Alaska 1962); *United States v. $3,236*, 167 F.Supp. 495, 498 (D. Alaska 1958); Annot., 19 A.L. R.2d 1228, 1232–34 (1951) (citing numerous cases).

Since I find the money to be a gambling implement, the direction to "seize and destroy" found in AS 11.45.040 must be analyzed. The majority reads the statute to require that all items seized be destroyed. My reading of the statute is somewhat different. Again I find the reasoning of the court in *Johnson* to be persuasive. The New Mexico court held that the money, segregated as gambling paraphernalia, could not be restored to the former owner.[4] Likewise, I believe that the appellants have no standing to contest the disposition of the money once it is classified as a gambling implement. Accordingly, I would affirm the court below.

4. 195 P.2d at 1020, citing *Dorrell v. Clark*, 90 Mont. 585, 4 P.2d 712 (Mont. 1931).